## Wytheville.

## PLEASANTS v. FLOOD'S ADM'R ET AL.

### June 16th, 1892.

HEIRS AND DISTRIBUTEES—*Purchase of encumbered land—Primary fund—
Case at bar.*—A farm encumbered by trust and other liens was
granted by husband to wife's use. She enjoined sale under trust
deed, alleging it had been satisfied, and that before becoming aware
of its satisfaction she had made payments, and prayed for account of
liens and payments. Report showed first lien to be the trust debt,
and the second her own, for moneys paid by her. Sale was decreed.
She purchased the land and paid the cash, and gave her bonds for the
deferred payments, and then died. Her heirs petitioned the court to
require the bonds to be paid out of her personal estate, to the exone-
ration of the land, which descended on them.·

HELD:

Under the circumstances, the land, and not the personalty, is pri-
marily bound for the payment of those bonds, as the purchase
was simply a mode of getting rid of the liens paramount to
those owned by her, and was a personal undertaking that was
merely collateral, and did not release the land from its primary
liability under the trust deed. But this is material only as
between her heirs and her distributees.

Argued at Richmond.    Decided at Wytheville.    Appeal
from decree of circuit court of Lynchburg city, rendered July
22d, 1890, in the chancery cause known by the style of *Plea-
sants* v. *Flood's adm'r.*    The decree being adverse to the com-
plainants, they appealed.    Opinion states the case.

*R. G. H. Kean* and *J. T. Brown,* for appellants.

*J. H. Lewis, H. D. Flood, W. M. Lile,* and *T. W. Harri-
son,* for appellees.

LACY, J., delivered the opinion of the court.

An agreed statement of the facts of the case is signed by the counsel on both sides, and certified by the clerk, from which the following case appears :

One Ambrose R. Woodroof, by deed dated the 24th of May, 1861, conveyed a tract of land situated in Amherst county, called "Pedlar Farm," of 597 acres, to Creed T. Wills and R. J. Davis, trustees, to secure to the Lynchburg Hose and Fire Insurance Company a loan of $3,000, for which he gave his bond of same date. The benefit of this bond and the trust deed subsequently was assigned to one John W. Woodroof, after it had been partly paid. Jennie P. Woodroof, the wife of the grantor in the said trust deed, did not unite in the deed in trust, and in 1875 she was divorced *a vinculo matrimonii* from her said husband, who had left the state and settled in California. On the 17th of August, 1875, the said Ambrose R. Woodroof conveyed with general warranty the said Pedlar farm to one Alfred M. Woodroof, trustee, for the sole and separate use of the said Jennie P. Woodroof, his wife, the consideration being stated to be, not only his love and affection for her, but her releasing her contingent right of dower in certain property, and assigning other property, which had been her separate estate; and the deed is silent as to any incumbrance on the said land. After Mrs. Woodroof's divorce she took her maiden name of Pleasants, and remained in possession of the said land for a number of years, when, in 1887, she married one Joel W. Flood. John W. Woodroof, the assignee of the $3,000 bond of May 24, 1861, died, leaving a will, of which James S. Dillard is the executor. After the death of John W. Woodroof and the qualification of his executor, and the marriage to Joel W. Flood in February, 1888, Dillard, the executor, called on Davis, the surviving trustee in the deed in trust of May 24, 1861, to enforce the

deed by sale of the farm according to the terms of the deed, by requiring cash enough to pay the bond, then claimed to be $5,000, and the residue on a credit of one, two, and three years; and Davis, trustee, advertised the sale of the farm accordingly; whereupon Joel W. Flood and wife obtained an injunction from the circuit court of Lynchburg, claiming in the bill that the debt due Dillard, executor, had been paid by Ambrose R. Woodroof in 1874; that the money paid on the assignment of the bond to John W. Woodroof had been furnished by Ambrose R. Woodroof; that there had been payments made on the bond by Mrs. Flood before she became aware of the circumstances, and before she knew the bond had been paid, which had greatly reduced the amount. This bill was answered by Dillard, denying the substantial allegations of the bill; and at the next May term of the circuit court, 1888, Flood and wife filed an amended bill, charging, in addition to the matters stated in their original bill, that there were other out-standing liens appearing upon said land, representing debts of Ambrose R. Woodroof, some of which they charged had been satisfied, and others complainants knew to be due in whole or in part, and as to the others they knew nothing one way or the other. The amended bill proceeded to state and file six extracts of judgments against A. R. Woodroof prior to his deed conveying the said Pedlar farm to A. M. Woodroof, trustee for Mrs. Flood, aggregating over $5,600, with interest for 15 or 18 years, most of it at 12 per cent.; also a lien to Spence, trustee, by deed, to secure $7,500 to Woodroof and Spence, dated November 5, 1870; and praying an account to ascertain the relative rights of all the said lien-holders, so as to show what liens exist, and their priorities; and that to the extent to which said Jennie P. Flood had made payments on account of the said debts secured in the deed of May 24, 1861, she should be substituted to the benefit of that security. An account was ordered, and the commis-

sioner reported (1) whether any, and, if any, how much, of the debt claimed by Dillard, executor, was due, and how much was paid by Mrs. Flood; (2) an account of all the liens on the Pedlar farm, and their priorities; and (3) the value of the real estate. The report was excepted to, and exceptions sustained; so that the liens as established by the court appear to be: *First lien*, due Dillard, $4,105.61; *second lien*, amount paid by Mrs. Flood on said debt, $2,923.39; *third lien*, due C. H. Rucker, administrator, $1,002.89; and other liens, aggregating, with these mentioned, $37,338.49. All of these liens represent debts of A. R. Woodroof. The commissioner reported the estimated value of the land to be $5,500. The court confirmed the report as thus modified, having stricken out the Spence deed of trust as satisfied; and, deeming it proper to retain the administration of the fund and the execution of the deed of trust of the 24th of May, 1861, to Davis and Wills, trustees, decreed R. J. Davis, surviving trustee, to proceed as he shall be advised to sell the real estate according to the terms of the deed, and to make report of his proceedings to the court, bringing in therewith the proceeds of the sale, after paying the expenses of the sale, and the bonds he should take for the deferred instalments of purchase-money. After this decree, Mrs. Flood paid to Dillard, executor, $1,131.60, and at their instance that sum was made by Davis, trustee, the amount to be required in cash of the purchaser; Dillard, executor, having agreed that, in the event Mrs. Flood should become the purchaser, said sum should be regarded as the cash payment, and the expenses of sale should be paid by Dillard out of it, and that bonds might be executed for the residue at one, two, and three years, with interest. At this auction sale Mrs. Flood became the purchaser, the sale being made by Davis, trustee, on the 17th January, 1889, at public auction, to the highest bidder; the price at which she purchased being $7,000. The cash pay-

ment of $1,131.60, mentioned above, being deducted, she gave her three bonds to Davis, trustee, at one, two, and three years, with interest from the day of sale, for $1,956.13 each, with Joel W. Flood as her surety therein. Davis, trustee, made his report to court at the May term, 1889, when, by decree, it was approved and confirmed.

As Dillard, executor, was plainly entitled to over $3,000 out of the deferred payments, he made an arrangement with T. Fauntleroy, trustee, to advance him, for the purposes of his estate, the .net amount of the first bonds, and gave said Fauntleroy an assignment of his interest in and right to the proceeds of said bond. At May term, 1889, said Fauntleroy filed his petition in the case, setting out this transaction, and by the decree of that term he was declared to be entitled to the proceeds of that bond at one year from 17th of January, 1889, with authority to withdraw the same (leaving an attested copy), and collect the same to his own use, reporting such collection promptly to the court. The court further decreed that Davis, trustee, should collect the bond for the second instalment when due, or earlier if the obligor should desire to anticipate its maturity, in whole or in part, and requiring him to deposit all sums collected in the First National Bank of Lynchburg, as the same should come to his hands, taking interest-bearing certificates, payable to the order of the court in the cause, and that he report his transactions to the court from time to time.

At this stage of the case (June, 1889,) Mrs. Flood died intestate, and without ever having had issue. Her heirs were James W. Pleasants and others, the appellants. Mrs. Flood had a considerable personal, legal, separate estate, and administration was taken on this in Appomattox county, where she and her husband, Joel W. Flood, had resided. The original suit was revived in the name of her administrator, and the heirs filed their supplemental bill and bill of

revivor against her administrator, Joel W. Flood, Dillard, executor, and Fauntleroy, trustee, and Davis, surviving trustee, asking that the personal estate of Mrs. Flood, deceased, in the hands of her administrator, be applied to the payment of the three bonds given for the deferred payments for the Pedlar farm, to the extent needful to satisfy the bond held by Fauntleroy, and the balance due to Dillard, executor, and the costs; and, such payments having been completed, that title to the land from Davis, trustee, be conveyed to the said heirs. H. D. Flood, administrator of Mrs. Flood, and Joel W. Flood, her husband, demurred to and answered this bill of her heirs, relying in their said answer (as well as by their demurrer) on the facts shown to support the conclusion of law that nothing which had been done in the matter had made the debt due on the bond given to Davis, surviving trustee, on the sale aforesaid, the debt of Mrs. Flood, in any such sense as to require the same to be satisfied out of her personal estate; and they insisted that the land was the primary fund for the payment of her said bonds, and that her said husband, as sole distributee, was entitled to her personal estate. They further stated that there had been no issue born of the marriage, and hence that said Joel W. Flood had no curtesy in the said land. The administrator further showed, in general terms, the possession of assets, the existence of other debts to an amount less than $1,000, and considerably less than the probable amount of the assets, and offered, if necessary, to settle his administration account in the cause.

Thomas Fauntleroy withdrew the first bond for $1,956.13, as authorized by the decree of May term, 1889, which matured 17th of January, 1890, and demanded payment. On the 10th of May, 1890, in term, Joel W. Flood filed his petition, setting out the facts with regard to said Fauntleroy having become the owner of said bond, and having made himself a party by petition to the cause, and the death of Mrs.

Flood; the demand upon him (Flood) for payment, and the threat of legal proceedings on the bond; and praying the court to enjoin said Fauntleroy and Davis, trustee, and Dillard, executor, from any proceedings against him to collect the respective bonds of him, as the surety therein, and that they be required to proceed first against the estate of Mrs. Flood, the principal, and that her estate be required to be exhausted before resort be allowed to the surety. To this petition (asking, also, that, if need be, it be considered as a cross-bill) Fauntleroy demurred and answered, insisting on the right to collect his debt, past due, by any proceeding he should be advised to adopt. The other parties in interest— Dillard, executor, and the heirs of Mrs. Flood, the infants by guardian *ad litem*—also answered said petition, disputing the ground on which such restraining order as might affect them was sought to be rested, insisting that it was without equity, and ought to be dismissed.

The case was submitted by consent to the judge of the circuit court for decision and decree in vacation. On the 22d of July, 1890, the judge certified to the clerk his decree, which, after bringing the case on, on the facts as above set forth, and on the motion of T. Fauntleroy, trustee, for leave to sue at law on the bond, is as follows: "The court, being of opinion that the purchase by Mrs. Jennie P. Flood of the Pedlar farm, at the sale thereof made by Ro. J. Davis, surviving trustee, in January, 1889, was simply a method of getting rid of the liens in excess of its value, and holding the land freed therefrom, and that there was no such expression of intention on her part to shift the primary liability from the real estate to the personal estate, doth deny the exoneration prayed for in the said supplemental bill and bill of revivor, and doth ascertain and declare that the Pedlar farm is primarily bound, in the hands of the heirs of Jennie P. Flood, deceased, for the payment of so much of the out-

standing bonds executed by her to Ro. J. Davis, trustee, and fully described in his report, as Mrs. Flood's estate may be called on to pay in this cause—that is to say, after allowing as offsets to said bonds, in favor of said heirs, the amount due to her in this cause, as fixed by previous decrees herein, which would be paid out of said bonds." And decreed, further, that the said heirs and appellants show cause why the said land should not be sold for the default in the payment of the purchase-money ; that Fauntleroy be allowed to sue at law, and recover judgment, but that he should not be allowed to proceed to enforce said judgments either against Mrs. Flood's administrator or against the surety, Joel W. Flood, until the further order of this court, but leave was given him to docket the same ; and, whatever conflict there was between this decree and any former decrees in the cause, this decree should be considered as modifying such former decrees to the extent of such conflict. Whereupon the heirs of Mrs. Flood applied for and obtained an appeal to this court. The error assigned here is that the circuit court denied the prayer of the heirs of Mrs. Flood to have the bonds of Mrs. Flood, given to Davis, trustee, acting as the commissioner of the court, for the purchase-money of this estate, so far as not virtually satisfied by her ownership of the liens, paid, like those of any other purchaser, out of her personal estate.

It is conceded to be a general rule that, as between the real and personal representatives of all persons deceased, the personal estate in the hands of the executor or administrator is the primary and natural fund which must be resorted to in the first instance for the payment of debts of every description, contracted by the testator or intestate; and, if the creditor proceeds against the real estate descended or devised, the heir or devisee who has sustained the loss shall be allowed to stand in the place of the specialty creditor, to reimburse himself out of the personal estate in the hands of the executor or admin-

istrator, provided such reimbursement will not prejudice any
of the creditors, or any other party having a more favored
claim than the heir or devisee, respectively. 2 Lomax, Ex'ors,
p. 241 ; 2 Jarm. Wills, 554 ; 1 Story, Eq. Jur., §§ 571, 573,
It is also conceded, and equally true, that if one " purchases an
estate subject to an existing mortgage, the debt does not, with-
out more, become his debt, so as to render him personally
liable to the mortgagee. Although he may be bound to the
mortgagor to indemnify him against the mortgage, the land
remains the proper fund for the discharge ; and it will require
clear evidence of the intention on the part of the purchaser
to make the debt his own, so as to render his personal estate
the primary fund for its payment. 2 Lomax, Ex'ors, p. 246.
The rule that the personal estate shall be first applied to the
payment of mortgages, is founded on the principle that the
debt was originally a personal one, and the charge of the real
estate merely a collateral security. But where this principle
fails, the rule does not take effect." Thus, when the mort-
gage debt was contracted by one person, and the lands so
mortgaged descended to another, his personal estate will not
be liable to the payment of the money. 2 Lomax, Ex'ors,
246. What is said in Story, Eq. Jur., § 573, *et seq.*, illus-
trates the subject clearly : " The doctrine of the court in
all cases of this sort is founded upon the same principle—that
is, to follow out the intention of the testator. The personal
estate is deemed the natural and primary fund for the pay-
ment of all debts, and the testator is presumed to act upon
this legal doctrine, until he shows some other distinct and
unequivocal intention. The general rule, therefore, of courts
of equity, although sometimes delivered in one form and some-
times in another, is that the personal estate shall be first
applied to the payment of debts, unless there be express
words or a plain intention of the testator to exempt his per-
sonal estate, or to give his personal estate as a specific legacy ;

for he may do this, as well as give the bulk of his real estate by way of specific legacy. But, although the personal estate is thus decreed the general and primary fund for the payment of debts, and still remains so, notwithstanding the real estate is also chargeable collaterally, yet the rule is otherwise, or rather, is differently applied, when the charge of the debt is primarily and principally upon the real estate, and the personal security of covenant is only collateral, for the primary fund ought, in conscience, in all cases, to exonerate the auxiliary fund. The debt or incumbrance may be, in its nature, real, or it may become so by the act of the person who has the power of charging both the real and personal funds; or the land, although it be auxiliary only to the personal estate of the original contractor of the debt or incumbrance, may yet become the primary fund, as between itself and the personal estate of another person, who may take the land either by descent or purchase, subject to the charge. In both these cases the personal estate is charged (if at all) only as a security for the land, and it ought to have the same measure of equity as the land is entitled to when it is pledged as a security for a personal debt." See *Duke of Cumberland* v. *Codrington*, 3 Johns. Ch. 229, 230, and cases there cited.

There is no dispute about these principles, but the appellants insist that, however this may be and is, by the act of Mrs. Flood in making herself personally responsible by bond for this debt, she has made the personalty the primary fund to this debt of hers. Up to the point when Mrs. Flood bought at the judicial sale made January 17, 1889, there was no debt due from her personally on account of this Dillard debt. It was in no degree her debt. It was a debt subjecting the real estate, and that only. The real estate was not only primarily, but solely, the fund which could be looked to. By her purchase and the execution of her bonds to pay this debt, upon the delivery of the land to her unincumbered she bound her-

self, and so provided another fund out of which the said debt could be satisfied—to-wit, her personal estate. But the debt which she thus agreed to pay was the same debt which rested originally, primarily, and solely on the real estate. The charge of the debt was principally and primarily upon the real estate, and this personal undertaking of hers was only collateral. The land, being the primary fund, is bound to exonerate the auxiliary fund. If the primary fund is or shall prove to be insufficient to satisfy the debt originally and primarily fastened upon it, then the auxiliary fund may be called into requisition. This is the effect of the act of Mrs. Flood. Before her purchase her personal estate was not bound at all; since her purchase her personal estate is bound, but only secondarily ; and the land—the real estate in the hands of her heirs—is bound primarily to pay the debt originally charged on it, and which was charged on it when it came into the hands of Mrs. Flood. As between her creditors the question would be immaterial; but between her heirs and her distributee the land remains the primary fund, as it has been from the first, to satisfy this debt. The circuit court having so decreed, we perceive no error in the said decree, and the same must be affirmed.

JUDGMENT AFFIRMED.