FRANCES S. WHEELER v. JOHN D. BENTON.[1]

February 3, 1898.

Nos. 10,931—(272).

Principal and Agent—Extension of Time for Payment of Debt—Authority of Agent—Sufficiency of Evidence.

Evidence *held* sufficient to justify findings that an agent granted to his principal's debtor an extension of time for the payment of the debt, and that the agent had authority on behalf of his principal to grant the extension.

Person Non Compos—Management of Estate by Expectant Heirs—Acts Binding upon Heirs.

Where the expectant heirs of a person who is non compos assume, without letters of guardianship, the management of his estate, which subsequently descends to them upon his death, their acts with reference to the property will bind themselves, although it would not bind their ancestor, if he had recovered his mental capacity, or his personal representatives, if the property were required for purposes of administration, such as the payment of debts.

Appeal by plaintiff from an order of the district court for Hennepin county, Smith, J., denying her motion for a new trial. Affirmed.

*M. P. Brewer*, for appellant.

*Wilson & Van Derlip*, for respondent.

MITCHELL, J.

The opinion on the former appeal in this case (67 Minn. 293, 69 N. W. 927) states most of the facts. The issues were whether Charles H. Wheeler, the husband of the plaintiff and the agent of her father, Henry L. Knowles, then the owner of the note in suit, had granted to William S. King, who had assumed its payment, an extension of time, and, if so, whether such extension was authorized or had been ratified. We held that, in view of the long course of dealing by Wheeler, as agent for Knowles, during which his acts had never been in any manner repudiated by the latter, and the further facts that Knowles was dead, and that plaintiff did not call

[1] Reported in 74 N. W. 154.

her husband to testify, and failed to offer any evidence to show want of authority on his part to grant the extension, the presumption was that the agent had such authority, or that the principal had subsequently ratified his act, although there was no direct testimony to that effect. We therefore held that the evidence did not support the findings, and remanded the case for a new trial.

Upon the second trial the evidence did not differ materially from that introduced on the first trial, except the additional testimony of Charles H. Wheeler and certain depositions as to Knowles' mental condition. The material findings of the court were to the effect that at the time of the maturity of the note, in April, 1890, Charles H. Wheeler did grant King an extension for six months, and that he had authority on behalf of Knowles to do so. If these findings were supported by the evidence, it necessarily followed that defendant was released, because it is undisputed that, to the knowledge of Wheeler, defendant, as between himself and King, was a mere surety, and that the extension, if granted, was without defendant's knowledge or consent. The question on the former appeal was whether there was evidence reasonably tending to support findings in favor of the plaintiff, and we held there was not. The question on this appeal is whether there was evidence reasonably tending to support findings in favor of the defendant.

1. The evidence amply supports the finding that Wheeler did in fact extend the time of payment to King. The principal point made by plaintiff's counsel against the sufficiency of the evidence in this respect is that there was nothing said about King's agreeing to keep the money for six months; that it did not appear that the arrangement was anything more than a gratuitous indulgence to King, leaving him at liberty to pay at any time. It is true that there is no evidence that King, in express words, agreed to keep the money for six months, but this was not necessary. Such an agreement need not be in express words. The language used by Wheeler and Darling, King's agent, construed in the light of the subsequent conduct of the parties in acting upon the agreement, amply justified the conclusion that they intended and understood it as a mutual binding extension for six months.

2. The question of the sufficiency of the evidence as to Wheeler's

authority to grant an extension is the important one in the case. We shall not refer to the evidence, so far as it appeared on the first trial, except to say that Wheeler purchased the note and mortgage for his father-in-law in 1888, and from start to finish he was, so far as third parties are concerned, the only person who ever appeared or was known in connection with their management and control. From the time King bought the mortgaged premises, and assumed the debt, in November, 1888, Wheeler made no demand or claim of any kind upon the defendant, until August, 1894, after King had become insolvent, and the mortgaged premises had greatly depreciated in value.

· We shall now refer to the additional evidence offered on the second trial. Wheeler testified that he never granted any extension to King; that he had no authority from Knowles to do so; and that he never informed Knowles, or any member of his family, that an extension had been granted. The fact that he did not appear as a witness on the first trial, although the vital issues in the case were the same as on the second trial, and he, above all others, was in position to know best what he had done and what his authority was, and that he was only called as a witness on the second trial when it appeared from the decision of this court that his testimony was absolutely essential to plaintiff's case, is certainly calculated to impair the force of his testimony. It was also in some respects quite indefinite and unsatisfactory.

It appears that Knowles' family, the expectant beneficiaries of his estate, consisted of his wife, and two unmarried daughters, living with him at Potsdam, N. Y., and the plaintiff, who resided with her husband in Minneapolis. He was a man of considerable means, and evidently the investment in this note and mortgage, which came to this plaintiff after her father's death as a part of her share of his estate, was made for the purpose of income or profit in the form of interest. It appears that Knowles' mental faculties began to fail as early as 1886, although it is evident, from Wheeler's testimony, that he was competent to transact ordinary business at the time of the purchase of this note and mortgage in January, 1888. While it may be that in April, 1890, when the extension was granted, he was unable to transact business personally, we do not

think the evidence is such as to require a finding that he was then incapable of appointing an agent to transact it for him. The finding of the court is that

"Knowles, from some time in the summer of 1890, and up to the time of his death as aforesaid, was in such a mental and physical condition that he was unable to do and transact business of any kind; that as early as the year 1886 the mental powers of the said Knowles began to fail, and continued to be more and more seriously impaired, until he reached the condition of imbecility, which ended in death in March, 1892."

It also appears that, after his mental faculties began to fail, one of his unmarried daughters assisted him in the transaction of his business, particularly in the capacity of clerk; that finally, as he grew worse, his family at home, particularly his wife, assumed the entire control and management of his business, not wishing to have any guardian appointed. It also appears that, at least after 1889, all of Wheeler's communications were with Mrs. Knowles or one of her daughters. These were all in the form of letters, but none of them were produced on the trial. It would appear, however, that they consisted exclusively of communications from Mrs. Knowles or one of the daughters transmitting the interest coupons to Wheeler as they matured, his remittances of the proceeds until King ceased to pay the interest, and subsequent letters to Wheeler inquiring why the interest was not paid. Mrs. Knowles sent him the interest coupon which matured in April, 1890, when the principal note matured, but did not transmit the principal note, and, so far as appears, did not inquire whether it would be paid at maturity, or at any time afterwards inquire why it was not paid. The last interest paid on the note was in October, 1890.

Mrs. Knowles was not a witness on the trial, either in person or by deposition. The depositions of the two unmarried daughters were taken as to the mental condition of their father, but they were not inquired of upon any other subject. The plaintiff, as a witness in her own behalf, testified that the note and mortgage in question were assigned to her in September, 1892, as part of her father's estate, and that she never heard of any extension of the time of payment of the note until defendant's answer was interposed in

this action. She also testified as to the mental condition of her father, but was entirely silent as to her knowledge as to how, or by whom, his business was managed after he became incompetent. There are other facts and circumstances that might be referred to if time permitted.

After reading the entire record, we are of opinion that the evidence would justify the conclusion that it was the understanding of Knowles in the first instance, and of his family afterwards, that the management of this investment was given to Wheeler, and that it was left entirely to his discretion whether payment at maturity should be insisted on, or whether the time of payment should be extended. We have not lost sight of the elementary rules of the law of agency, that an agent cannot create in himself authority to do an act merely by its performance, and that the burden was on the defendant in this case to prove either prior authority or subsequent ratification. But it is not necessary to prove this by direct evidence. It may be inferred from circumstances, such as a long course of dealing by an agent with reference to his principal's business, which has never been repudiated.

We do not think the case depends exclusively upon the acts of Knowles himself. When he became incapacitated to transact business, his wife and daughters, as his expectant heirs and the beneficiaries of his estate, stepped in and assumed entire control of the management of his property. There is no evidence that plaintiff did not know of and acquiesce in their doing so. Their acts probably would not have bound Knowles himself, had he recovered his mental faculties. Neither would they have bound his personal representatives, in so far as the property might be necessary for purposes of administration, as, for example, the payment of debts. But they could bind themselves by their acts in relation to the property. This is true as to heirs dealing with the estate of their deceased ancestor before administration. Vail v. Anderson, 61 Minn. 552, 64 N. W. 47; Cooper v. Hayward, supra, page 374. We see no reason why the same rule should not apply to a case where the expectant heirs of a living person, who is non compos, assume the management of his estate, which subsequently descends to them upon his decease.

As all the assignments of error relating to the findings of fact, and the refusal of the court to amend them, go to the sufficiency of the evidence, it is unnecessary to consider them specifically.

Order affirmed.