# Richmond

LAURA E. LIVERMON, IN HER OWN RIGHT AND AS EXECU-
TRIX UNDER THE WILL OF GEORGE W. LIVERMON,
DECEASED, AND OTHERS, v. SARAH W. LLOYD,
SUING FOR THE BENEFIT OF HERSELF
AND OTHER CREDITORS OF
GEORGE W. LIVERMON.

January 15, 1931.

Present, Prentis, C. J., and Epes, Hudgins, Gregory and Browning, JJ.

*Tazewell Taylor* and *Lucian B. Cox,* for the appellants.

*James E. Heath* and *Wm. G. Maupin*, for the appellee.

PRENTIS, C. J., delivered the opinion of the court.

The question in this case is whether or not the estate of George W. Livermon, deceased, has been released from an obligation which he assumed as part of the purchase price of certain realty in the city of Norfolk.

There were certain funds under the control of the Circuit Court of the city of Norfolk in the chancery cause of *Rohan* v. *Rohan, Executrix,* amounting to $24,079. Robert W. Tomlin, of the Norfolk bar, was special commissioner, and recommended the investment of the funds. The debtor was to be Roads Land Corporation, which desired to borrow $30,000, to be secured by deed of trust on its property at Granby and Seventeenth streets. At the time of the transaction the Roads Corporation had already entered into a contract to convey the property to George W. Livermon for $58,300, and a part of the purchase price was to be the assumption by Livermon of the $30,000 debt to be secured by deed of trust on the property, and Livermon was to covenant in the deed conveying the property to him to assume and pay the debt. Tomlin, as special commissioner, reported the facts to the court, and stated that Livermon was a man of considerable property, and evidently referred to his covenant to pay the debt as an inducement. Tomlin further reported that should the court authorize the investment of the $24,000, of the *Rohan* v. *Rohan* fund as recommended, this would be made the first lien on the property to be conveyed, and that he, Tomlin, would provide the $6,000 needed from other sources, to constitute a second lien thereupon. He was by decree of December 3, 1919, authorized to close the transaction.

The $6,000 additional which was needed was supplied

through Tomlin. The Roads Corporation executed its two deeds of trust to Tomlin, trustee, dated December 8, 1919, the first securing $24,000, payable to the order of the Circuit Court of the city of Norfolk, for the benefit of the Patrick McCarrick estate in the pending chancery suit of *Rohan* v. *Rohan, Executrix,* three years after date, as the first lien, and the second securing two bonds for $6,000 in the aggregate, one for $4,333, payable three years after date to Sarah W. Lloyd, and the other for $1,667, payable to Ellen E. Bowden as the second lien. The Bowden note has been paid.

Thereafter, by deed dated January 5, 1920, the Roads Land Corporation conveyed the property to George W. Livermon, reciting the liens created by the two deeds of trust, and containing this covenant: "As part of the above named consideration, the said G. W. Livermon hereby assumes and promises to pay an indebtedness of $30,000 and interest, secured by two deeds of trust on the foregoing property, made by said Roads Land Corporation to Robert W. Tomlin, trustee, recorded," etc. Livermon, the grantee, executed and acknowledged this deed. Soon thereafter, February 5, 1920, Livermon sold the property to J. A. Baker, J. A. Moore and C. E. Worrell, and they signed the deed executed by Livermon to them and covenanted to pay the debts secured by the two deeds of trust referred to. Moore and Worrell thereafter acquired Baker's interest in the property.

The bonds became due December 8, 1922. They were not paid at maturity. The interest thereon was paid semi-annually until December 8, 1925, but none of the principal.

Sarah W. Lloyd, suing for the benefit of herself and all other creditors of the estate of George W. Livermon, deceased, then filed her bill against Laura E. Livermon, executrix of George W. Livermon, and in her own right, and against their two children as legatees and devisees of

Livermon, and prayed for an accounting and settlement of the debt.

By way of defense to that bill, the defendants claimed that upon the conveyance by Livermon to his grantees and their assumption of the debt as part of the purchase money, they became the principal debtors, and he, Livermon, thereafter became surety therefor; and that as surety he had been released, the ground for this claim being that after maturity contracts had been made to extend the time of payment of the principal, which contracts bound the creditor, and that therefore he as surety had been released.

There seems to be no reason to doubt that when Livermon sold the property and accepted the covenant of his grantees, Baker, Moore and Worrell, to assume the debt, his relation to the debt was changed from principal to surety.

The Virginia cases of *Willard* v. *Worsham*, 76 Va. 392, and *Osborne* v. *Cabell*, 77 Va. 462, as to this, are in accord with the generally accepted rule, that when the grantee in a conveyance of land covenants to assume and discharge a previously existing mortgage thereon as part of the purchase money, then such grantee thereby becomes the principal debtor for the payment of the incumbrance, and the grantor by necessary implication becomes the surety.

It is also conceded that a valid and binding agreement between the principal debtor and the creditor, under which the time of payment is extended, without the consent of the surety, releases the surety, and the Virginia cases are in accord with the general rule upon this question. *Shannon* v. *McMullin*, 25 Gratt. (66 Va.) 211; *Stuart* v. *Lancaster*, 84 Va. 774, 6 S. E. 139; *Carson* v. *Mott Iron Works*, 117 Va. 24, 84 S. E. 12.

So that the question presented by this record is a question of fact, and that is whether or not the time of

payment of these obligations had been extended by the creditors so as to release Livermon and his estate as surety therefor.

The court entered a decree holding the Livermon estate liable, and from that decree this appeal is taken.

This, of course, leads us to the testimony.

First, then, as to the Lloyd debt:

Tomlin testified that he had made the loan for Mrs. Lloyd, sent the bond to her, and it had always remained in her possession; that he collected the interest and remitted it to her by his own check; that on December 8, 1922, when the bond matured, she made no request for the payment of the principal, and he had no communication whatever with her on the subject; that she was always at liberty, and had the right at all times after the date of maturity, to demand the principal of her debtor; that had she called for it, he would have taken the note himself and paid the money to her. This because when the debt matured he (Tomlin) entered into an arrangement with the principal debtors, Moore and Worrell, for a consideration of $43.43, to carry the loan for them until December 8, 1923, and a similar arrangement appears to have been made December 8, 1923, to carry it until December 8, 1924.

Mr. Tomlin testified unequivocally that Mrs. Lloyd, the creditor, knew nothing whatever of this arrangement with Moore and Worrell; that she received no part of his fee; that in making the bargain he was acting for himself, upon his own responsibility, and not as Mrs. Lloyd's agent; that his conduct could not and did not bind her in any way; that he had frequently made similar contracts for loans which he had placed for his clients, and then had the client call for his money, in which event he would take over the obligation for himself, or for some other client, and pay the debt to the original creditor. By way of emphasis, he testified unequivocally that his bargain with Moore and

Worrell was that they would not have to pay the money for another year; that if within that year Mrs. Lloyd had called for her money, he would have been obliged to pay it to her; and that the arrangement was his own venture, which he personally stood to make good; and that he was not in this transaction acting as agent for Mrs. Lloyd in any way.

Mrs. Lloyd testified to the same effect. She had always had possession of the bond, and she testified that she knew nothing of any change in the obligation or of any change in ownership of the land; that she knew nothing about and did not authorize any extension or renewal of the bond; that she did not require payment of the principal at maturity because she did not need the money, and thought it was well invested; that she knew nothing of the consideration which was paid to Mr. Tomlin for the renewal of the loan; that she had never authorized Mr. Tomlin to do more than invest the money and collect the interest; and that if she had needed the money when it was due, she would have called for it.

There is no contradiction of this evidence. It is claimed, however, that as Mr. Tomlin conducted all of Mrs. Lloyd's business with reference to this transaction and some others of like nature, and Mrs. Lloyd relied upon him and paid no particular attention to the debt, that, therefore, Mr. Tomlin was the general agent of Mrs. Lloyd, with implied authority to act for and bind her in connection with the extensions.

This might, perhaps, be an unanswerable argument if there were any testimony in the case showing that Mr. Tomlin assumed to act for Mrs. Lloyd in making the extension. The evidence is precisely contrary. Suppose that instead of entering into this contract upon his own responsibility, and without notice to Mrs. Lloyd, Tomlin had instead referred the debtors to a surety company, or to

some other entire stranger to the transaction, and either had made the contract with Moore and Worrell, the debtors, which Mr. Tomlin made, and this without the knowledge of the creditor, Mrs. Lloyd? Certainly no question could then have been made as to such a contract made with a stranger. This certainly would have been an independent contract, valid as between the parties thereto, but could not possibly be construed to affect the right of the creditor to foreclose the mortgage immediately in case the debt were not paid upon demand.

The principal debtors, Moore and Worrell, throw no light upon the transaction, and only know that they paid Mr. Tomlin for the extension.

The only case relied upon for the appellants which needs to be referred to on this question is the case of *Wheeler* v. *Benton*, 67 Minn. 293, 69 N. W. 927; *Id.*, 71 Minn. 456, 74 N. W. 154. It was held in that case that the surety, who stood in the same relation to the property and debt as Livermon does here, was released, and significance is attached to the fact that Wheeler, while not the creditor, was an agent, apparently clothed with authority to represent the creditor. It is found as a fact that at the maturity of the principal note, Wheeler and the principal debtor agreed that the time of payment should be extended, and in consideration thereof the debtor agreed to pay interest on the indebtedness during the time at the rate of eight per cent per annum, and that this agreement was renewed. The case differs from this in that the creditor apparently received excessive interest, paid as the consideration for the extension. It is shown there that Knowles, the principal debtor, had become mentally incompetent at the time of these extensions, and that the note in question would become the property of the wife of Wheeler, the agent, upon the death of her father, Knowles; and the court, in referring to this feature of the case, says (71 Minn. 460,

74 N. W. 154, 155): "We do not think the case depends exclusively upon the acts of Knowles himself. When he became incapacitated to transact business, his wife and daughters, as his expectant heirs and the beneficiaries of his estate, stepped in and assumed entire control of the management of his property. There is no evidence that plaintiff did not know of and acquiesce in their doing so. Their acts probably would not have bound Knowles himself, had he recovered his mental faculties. Neither would they have bound his personal representatives, in so far as the property might be necessary for purpose of administration, as, for example, the payment of debts. But they could bind themselves by their acts in relation to the property. This is true as to heirs dealing with the estate of their deceased ancestor before administration. *Vail* v. *Anderson*, 61 Minn. 552, 64 N. W. 47; *Cooper* v. *Hayward*, 71 Minn. 374, 74 N. W. 152 [70 Am. St. Rep. 330]. We see no reason why the same rule should not apply to a case where the expectant heirs of a living person, who is *non compos*, assume the management of his estate, which subsequently descends to them upon his decease."

The facts of this case are quite different. We have no principal debtor incompetent to attend to his own business, and we have no heirs at law or legatees expectant in possession of the note and undertaking to attend to the business for themselves and because of their present or prospective ownership of the debt. Even in that case, it seems quite apparent that had the principal debtor been restored to sanity, the court would not have held him bound by the acts of the agent, Wheeler. That case as well as this depends upon the specific facts shown. Here it is clearly proved that Tomlin did not undertake to bind Mrs. Lloyd; that Mrs. Lloyd was ignorant of the arrangement which Tomlin had made on his own responsibility; that she never knew of it and never ratified it, and therefore she was not legally bound by it.

■ Those who knew Mr. Tomlin knew that he would not consciously transgress any ethical rule, for none bore any higher reputation for scrupulous integrity, but the case illustrates the danger of misunderstandings which always impends whenever an attorney undertakes to make independent personal contracts having the slightest connection with business matters in which his clients have even the remotest interest. Such transactions always arouse suspicion, generally lead to litigation, and should always be avoided.

Had Tomlin undertaken, without express authority, to bind Mrs. Lloyd, the case might have presented a different aspect. It must, however, be decided upon the testimony adduced in the trial court. It should not be decided in favor of Livermon's estate, because there is no affirmative evidence of any extension by the creditor, Mrs. Lloyd, or by her authority, or by Tomlin assuming to act for her, and two reputable witnesses have testified unequivocally that there was no such extension by or for her. This rebuts every implication to the contrary which might otherwise arise.

Second, then, as to the $24,000 debt, loaned because authorized by the decrees of the Circuit Court of the city of Norfolk.

As to this it seems hardly necessary to say anything more than that the Circuit Court of the city of Norfolk only by appropriate decree could extend the time of payment of that debt, so as to relieve the surety, and that it has never been so extended.

■ In order to relieve a surety, such an agreement for extension must be a binding contract, supported by consideration, with all the elements of a contract. 21 R. C. L. section 67, page 1020, and cases cited; Williston on Contracts, Vol. 2, section 1222, page 2220, and cases cited.

In a comparatively recent case, *Graham* v. *Pepple* (1923),

132 Miss. 612, 97 So. 180, 184, 30 A. L. R. 1284, the essentials of such an agreement are thus succinctly expressed: "It is clear that an agreement to extend the time of payment which will release an indorser must be a positive, binding agreement, supported by a new and valuable consideration, and that mere indulgence or forbearance granted to the debtor does not release the surety; or, in other words, in order to effect the release of the surety by an agreement to extend the time of payment, the creditor must so tie his hands under the new agreement as to preclude himself from enforcing the old contract during the period covered by the extension." 7 Perm. Supp. R. C. L., section 67, page 5136. *Commercial Sav. Bank* v. *Dunning,* 202 Iowa 478, 210 N. W. 599, 59 A. L. R. 983; Note, 63 A. L. R. 1532.

This happened in connection with this $24,000 loan. Mr. Tomlin, on his own responsibility and for a consideration, made a contract with the principal debtors similar to that which he had made with reference to the Lloyd loan. He fully realized the danger of misunderstanding and of litigation, because on the 10th day of February, 1925, he addressed this paper to the court:

"The undersigned, Robert W. Tomlin, certifies to the court as follows:

"That the loan of Twenty-four Thousand ($24,000.00) Dollars of the funds of the Patrick McCarrick estate having been made by this court in the year 1919 to the Roads Land Corporation on the recommendation of the undersigned, the same being secured by deed of trust from said corporation to Robert W. Tomlin, trustee, dated December 8, 1919, of record in the clerk's office of the Corporation Court of this city in D. B. 25-B, 173, conveying fifty-three by one hundred (53 x 100) feet at the southwest corner of Granby and Seventeenth streets, in the city of Norfolk, Virginia, the undersigned regards the guaranty of the solvency and sufficiency of the said security as his moral and

legal duty and therefore hereby obligates himself to the owners of the Patrick McCarrick estate as follows:

"The loan is to continue on said property for three (3) years from the 8th day of December, 1924, that is to the 8th day of December, 1927, provided the owners of the property in the meanwhile keep up the payments of the interest on the debt and of the taxes on the land. If, on December 8, 1927, the court sees fit to call the loan and require payment of the principal and interest, and it become necessary to order a foreclosure sale of the property under the deed of trust, should such proceeds of sale be insufficient to pay the expenses incident to the foreclosure and the principal and interest of the debt, I hereby bind myself and my estate to pay to the order of the court in this cause the amount that will be necessary to make up such deficiency.

"Witness my signature and seal this 10th day of February, 1925.

(Signed)   ROBERT W. TOMLIN."

It will be observed that this is not an official communication, either as special commissioner or as an attorney. It is addressed to the court by him as an individual. He seeks thereby not to relieve himself, but on the contrary obligates himself personally to the creditor, the Patrick McCarrick estate, and undertakes to bind himself and his estate to pay to the order of the court in the cause such amount as may prove to be necessary to make up any deficit which may occur. Thereafter, as counsel for the executrix of the Patrick McCarrick estate, he made a report to the court, showing the payment of State and city taxes upon the property for 1923, and a balance due for taxes for 1924, and concludes that report with this statement, referring to the other document which he had previously filed with the papers: "The undersigned has

also filed in the papers in the cause a paper addressed to the judge of this court, setting forth the extension to December 8, 1927, of the payment of the $24,000 loan secured on the property at the southwest corner of Granby and Seventeenth streets, and certain obligations assumed by the undersigned touching said loan."

This report was filed October 13, 1925, in the cause of *Rohan* v. *Rohan, Executrix,* and is thus referred to in the decree: "This day came Ellen Rohan, Executrix of Patrick McCarrick, by counsel, and asked leave to file her report showing payment of taxes required by decree entered herein on the 11th day of December, 1924, to be paid by her, vouchers for said taxes being returned with said report, to which said report no exceptions have been taken, which leave being granted said report is accordingly filed. On consideration whereof the court doth confirm the said report in all respects."

The appellants claim that this order of confirmation should be construed as approving and confirming the extension of the $24,000 loan, so as to bind the court, grant the extension and therefore to release the surety. We cannot so construe the decree. Upon its face it only refers to the payment of taxes. The court was never asked either to ratify or to approve the personal transaction of Mr. Tomlin to which the report, but not the decree, refers. All that occurred with reference to this extension was done by Mr. Tomlin on his personal responsibility; there was no suggestion that the court assume any responsibility therefor, or to exonerate him, and no such action was taken by the court in the decree.

There is a claim for the appellees that Livermon should not be held to be a mere surety because of the specific language of his covenant, which has been heretofore quoted. We suppose that usually, in such cases, the purchaser merely assumes the debt which constitutes a con-

tinuing lien upon the property conveyed to him, while the language here used, severed from the occasion and context, imports an original promise by Livermon to pay the debt in any event. The cases cited in the briefs in support of this contention are cases in which there were direct contracts of suretyship, *e. g.*, upon a guardian's or contractor's bond. None of them refer to cases like this, and so far as we are advised the realities of this particular transaction should govern and the usual rule be applied thereto. When Livermon himself conveyed the property and accepted a similar promise from his grantees, they became the principal debtors, and as a result he became surety. This not by any express contract of suretyship, but under the doctrine of subrogation and by necessary implication, and as a result of the express contract of his grantees who thereby assumed the debt.

The appellants here have failed to show that either of the creditors entered into any contract which bound them to extend the time for the payment of these debts by the principal debtors, and having so failed it follows that we are of opinion that there is no error in the decree.

*Affirmed.*

Epes, J., concurring in part:

I concur in the conclusion reached by the Chief Justice in so far as it relates to the debt of $24,000 due to the Circuit Court of Norfolk county in the chancery cause of *Rohan* v. *Rohan*. No acts of Mr. Tomlin could bind said court to the extension of said loan.

I dissent from the conclusion reached by the Chief Justice in so far as the debt of $4,333 due to Mrs. Lloyd is concerned. I am of opinion that the acts of Mr. Tomlin, proven by the evidence in this case, operated as a suspension of the right of Mrs. Lloyd to have a foreclosure of the deed of trust securing this debt, in which deed of trust

Mr. Tomlin himself was a trustee, and bound Mrs. Lloyd to an extension of this loan; and that said suspension of the right to foreclose was made and such extension granted without the consent, expressed or implied, of Mr. Livermon, who in fact, had died before the extension was applied for or was granted.