# Richmond

ROSE SIMMONS OWEN, ET AL. V. EUDORA EVA WHITLOW SIMMONS LEE AND VIRGINIA TRUST COMPANY, ETC.

April 22, 1946.

Record No. 3030.

Present, All the Justices.

The opinion states the case.

*Irby Turnbull* for the appellants.

*Crews & Clement* and *John Y. Hutcheson,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

This litigation, involving the settlement of the estate of W. L. Simmons, deceased, is before us for the second time. On the former appeal (*Simmons* v. *Simmons,** 177 Va. 629, 15 S. E. (2d) 43) we affirmed a decree of the lower court sustaining the contention of the widow that, despite her previously indicated contrary intention, she had effectively renounced her husband's will. The cause was remanded to the lower court for a settlement of the estate, a determination of the distributive share of the personal property to which the widow was entitled, and the assignment of dower to her in the lands of which her husband died seized and possessed.

Subsequent to the former appeal, a decree of reference was entered by the lower court directing the taking of a number of accounts, including a statement of the debts due by the decedent, and an ascertainment of what damage, if any, the widow had sustained by the alleged withholding of any real or personal property to which she was entitled. The present appeal involves the action of the lower court on the report filed by the commissioner in execution of this decree of reference.

According to the opinion on the former appeal the appraised value of the personal property was $37,486.24, and that of the real estate was $54,221 (177 Va., at page 638, 15 S. E. (2d), at page 46).

The commissioner reported that in addition to the resi-

---

*Since the former appeal the widow has remarried and is now Mrs. Eudora Eva Whitlow Simmons Lee. The present appellant, Miss Rose H. Simmons, has since married and is now Mrs. Rose Simmons Owen.

dence and other real property the testator owned three farms, each of which he had acquired subject to a certain mortgage or mortgages. Shortly after the testator had acquired these latter properties he executed separate assumption agreements with the holders of the respective liens, whereby he expressly assumed and bound himself to pay off the balance due on each indebtedness, with interest, as it became due, to the same "extent" as if he had been the "original mortgagor." During his lifetime the testator carried out each of these obligations, with the result that at the time of his death the total principal of the several indebtednesses had been reduced to the approximate amount of $6700.

The devisees of such real estate contended that each of these mortgages should be paid out of the personal estate, which is more than ample for the purpose, to the exoneration of the respective real properties upon which they are liens.

The lower court declined to adopt this view and decreed that notwithstanding the assumption by the testator of the payment of the several lien indebtednesses, in the absence of a testamentary direction to the contrary, the real estate remained "the primary source" for payment of such debt, and that the testator's personal estate was only secondarily liable therefor. From this decree the devisees of the real estate involved have appealed.

In this State it is well settled that, in the absence of a contrary testamentary direction, the personal estate of a decedent is the primary fund for the payment of his debts, even though they may be secured by a lien given by the decedent in his lifetime on real estate. *New* v. *Bass, etc., Co.*, 92 Va. 383, 389, 23 S. E. 747; *Todd* v. *McFall*, 96 Va. 754, 763, 32 S. E. 472; *Peatross* v. *Gray*, 181 Va. 847, 856, 27 S. E. (2d) 203, 208; Harrison on Wills and Administration, section 353, p. 642.

The appellees do not question this to be the general rule, but say that there is an exception where, as here, the property is acquired by the testator subject to a lien or mortgage. In such a case, they say, the land remains the primary source

for the payment of the lien indebtedness, even though the testator, during his lifetime, may have assumed the payment of such indebtedness. This view finds support in *Pleasants* v. *Flood*, 89 Va. 96, 15 S. E. 504, relied upon by the lower court and by the appellees.

In that case Mrs. Flood's first husband, Ambrose R. Woodroof, conveyed certain real estate in trust for her use. It was encumbered beyond its value. There was a threatened foreclosure sale of the property under one of the deeds of trust, which Mrs. Flood had enjoined, alleging that the debt sought to be enforced had been satisfied, partly out of her own funds. An accounting of the liens showed that the property was subject to a first lien held by creditors of her former husband, by a second lien due to Mrs. Flood for moneys paid by her, and by other liens, all far in excess of the value of the property. The property was decreed to be sold and was bid in by Mrs. Flood. She paid a part of the purchase price in cash and executed and delivered her bonds to the trustee for the balance. A deed for the property was to have been delivered to her upon the payment of the purchase-money bonds. Shortly after the sale on these terms had been confirmed, Mrs. Flood died intestate and the question arose as to whether the bonds which she had given in part payment of the purchase price of the property should be paid out of her personal estate, to the exoneration of the land.

The lower court held that the arrangement was "simply a method," employed by Mrs. Flood, for "getting rid of the liens" paramount to hers, and was not an indication of an intent to shift the primary liability from the land to her personal estate.

In affirming the decree, this court held (89 Va., at page 106) that since the original debt was not Mrs. Flood's, "the debt which she thus agreed to pay was the same debt which rested originally, primarily, and solely on the real estate," and that hence "the charge of the debt was principally and primarily upon the real estate, and this personal undertaking of hers was only collateral" thereto. Hence, it was held

that the purchase-money bonds, although personally signed by Mrs. Flood, should not be paid primarily out of her personal estate.

The opinion in *Pleasants* v. *Flood, supra,* was handed down in 1892, and does not seem to have been since referred to by this court. We think the conclusion is unsound in principle, is not in accordance with the great weight of authority, particularly the more recent cases, and should be overruled.

■ It is true, as we shall presently see, that there are cases which hold that notwithstanding the assumption by the testator, during his lifetime, of a mortgage indebtedness upon land purchased by him, the land remains the primary source for the payment of such indebtedness. But a careful examination of the subject discloses that the recent authorities are practically unanimous in the view that where the testator refinances the mortgage or deed of trust indebtedness, and substitutes his direct personal obligation for the former lien indebtedness assumed by him, as was done in the *Flood Case,* the new debt thus created is payable primarily from his personal estate. See Harrison on Wills and Administration, section 353, p. 643.

■ According to the weight of authority, whether an encumbrance not created by the testator but assumed by him at the time of his acquisition of the property, or later, should be paid primarily out of his personal estate, depends upon whether, under the terms of the assumption contract, the testator has made himself personally liable for the debt to the holder thereof. 4 Page on Wills, 3d (Lifetime) Ed., section 1489, pp. 302, 303; 21 Am. Jur., Executors and Administrators, section 298, p. 550.

■ Of course, if the testator has acquired the property merely subject to the encumbrance and has assumed no personal obligation as to the debt secured thereby, his estate is not liable for the obligation, and the land remains the primary source for the payment of the debt. 4 Page on Wills, 3d (Lifetime) Ed., section 1489, pp. 302, 303; 33 C. J. S., Executors and Administrators, section 263,b, p. 1275; Harrison on Wills and Administration, section 353, pp. 642, 643.

But, as is said in 4 Page on Wills, 3d (Lifetime) Ed., section 1489, p. 303, "Where the grantee, who assumes and agrees to pay an incumbrance becomes personally liable to the holder thereof, the amount of such incumbrance is to be paid out of his personalty, as though he had created the debt himself."

This conclusion, we find, is in accordance with the weight of authority, and particularly the holding in the recent cases. See *Swift* v. *Harley*, 20 Ind. App. 614, 49 N. E. 1069, 1071; *Equitable Trust Co.* v. *Shaw*, 22 Del. Ch. 47, 194 A. 24; *In re Hoff's Appeal*, 24 Pa. 200; *O'Conner* v. *O'Conner*, 88 Tenn. (4 Pick.) 76, 12 S. W. 447, 7 L. R. A. 33; *Tracy* v. *Atwell*, 58 App. D. C. 397, 32 F. (2d) 392; *Union Trust Co.* v. *Brendlinger*, 59 App. D. C. 294, 40 F. (2d) 806; *Barlow* v. *Cain*, 146 Ark. 160, 225 S. W. 228; *Higinbotham* v. *Manchester*, 113 Conn. 62, 154 A. 242, 79 A. L. R. 85; *Smith* v. *Kibbe*, 104 Kan. 159, 178 P. 427, 5 A. L. R. 483; *In re Johnson's Estate*, 66 S. D. 331, 283 N. W. 151, 120 A. L. R. 574.

The facts in *Equitable Trust Co.* v. *Shaw, supra*, are quite similar to those in the case before us. There the testator, during his lifetime, had purchased real estate which was subject to a mortgage. Shortly thereafter he executed an obligation whereby he bound himself personally to the mortgagee to assume and discharge the indebtedness. There being no testamentary direction as to the source from which the debt should be paid, it was held that it must be discharged from the personalty.

The court pointed out that in the absence of a testamentary direction to the contrary, where a testator has given his own obligation secured by a mortgage, the authorities agree that the debt should be discharged out of the personal estate. The same is true, it was held, where the testator has entered into an obligation with the mortgagee whereby the testator makes the indebtedness his own and binds himself to pay it. By such an obligation, the court said, the decedent takes upon himself "the status of a direct and primary obligor,"

and not merely that of an indemnitor of the original mortgagor.

In *Tracy* v. *Atwell, supra,* the testatrix had expressly assumed and agreed to pay off a mortgage as a part of the consideration of the purchase price of the property. Her will directed that the executor should pay and discharge all of the decedent's "lawful debts." It was held (32 F. (2d), at page 393) that, "So far as the present question is concerned, the attitude of the testatrix was the same as if she had placed a new mortgage upon the property at the time when she purchased it, and had paid off the Breuninger mortgage with the proceeds. This debt therefore must be paid like the other debts of the estate, if such exist, from the personal assets thereof."

There are cases which hold that where land is purchased subject to a deed of trust or a mortgage, which the grantee assumes and agrees to pay off as a part of the purchase price, such land remains the primary source from which the debt is to be discharged. 16 Am. Jur., Descent and Distribution, section 35, p. 803; 21 Am. Jur., Executors and Administrators, section 298, pp. 550, 551. Some of these decisions turn on the proposition that under such an assumption agreement the grantee becomes, not the primary debtor, but merely the indemnitor of the original debtor. See 4 Page on Wills, 3d (Lifetime) Ed., section 1489, p. 302.

However, it has long been settled in this State that when, in a conveyance of land, a grantee covenants to assume and discharge a previously existing mortgage thereon as a part of the purchase price, he thereby becomes the principal debtor for the payment of the encumbrance, and the grantor by necessary implication becomes the surety. *Willard* v. *Worsham,* 76 Va. 392, 394, 395; *Livermon* v. *Lloyd,* 155 Va. 940, 945, 157 S. E. 146; *Hofheimer* v. *Booker,* 164 Va. 358, 364, 180 S. E. 145, 146.

*A fortiorari* is the same true where, as in the case before us, the grantee enters into an express contract with the holder of the mortgage whereby the grantee binds himself to pay off and discharge the debt.

■ Accordingly, we hold that where a testator buys real estate subject to a mortgage and thereafter enters into a contract with the holder of the mortgage whereby the testator expressly agrees to assume and pay off the indebtedness, in the absence of a testamentary direction to the contrary, such debt should be discharged out of the personal estate to the exoneration of the realty.

An examination of the Simmons' will not only discloses no direction that these mortgages should be discharged primarily out of the real estate, but, on the contrary, indicates that the testator intended that they should be discharged from his personal estate.

The first paragraph of the will is: "I desire all of my just debts paid." This formal direction, usually found in wills, merely recites the duty which every executor has under the law. As we said in *Neblett* v. *Smith*, 142 Va. 840, 853, 128 S. E. 247, "this provision, unless modified by something extraneous, is an expression of a desire that these debts be paid without any distinction as to the sources from which the necessary funds should come."

In the second and third paragraphs the testator gives $500 to his widow and a like amount to each of his sisters.

In the fourth paragraph the residence property and its furnishings are left to a sister, Miss Simmons (now Mrs. Owen), for life, with remainder to a nephew.

In the fifth paragraph the sum of $25 per month is directed to be paid to the widow during her life, or as long as she remains unmarried. For that purpose the executor is directed to invest "a sufficient amount of my personal estate."

Under the sixth paragraph of the will "all my personal estate" is left to the testator's two sisters, in equal shares.

Under the seventh paragraph "all the rest of my real estate" is devised to the testator's two sisters for life, with remainder "to the descendants of my said sisters, in equal amounts, *per stirpes*." This paragraph then provides that the title to the real estate is not to "devolve" upon the testator's sisters, but the executor is "to take charge of all my real estate, except my residence," and sell the same either

publicly or privately within ten years after the death of the testator, upon such terms as the executor may deem best. Prior to any such sale, the executor is authorized to rent the same. Then follows this provision: "I desire that *all the money realized from the sale of my said real estate shall be invested and held intact*, in accordance with the first part of this clause of my will, but it is my wish that all the income realized from the said real estate or from the money invested, or the income from the purchase moneys realized from the sale of the said real estate, shall be paid to my said sisters, Rose H. Simmons and Annie Lou Wilkinson, in equal amounts, after the payment of all necessary costs." (Italics supplied.)

In the eighth clause the Virginia Trust Company of Richmond is named as executor.

We thus see that there is no direction, either express or implied, that the debts of the testator are to be paid out of the real estate. On the contrary, the seventh paragraph of the will indicates that the real estate is not to be sold for that purpose, but is to be converted into a trust fund to be "invested and held intact," both as to principal and income, for the benefit of the testator's two sisters during their lives, with remainder to their descendants.

It is true that the widow has renounced the will, as she had the right to do, and thereby became entitled to such part of the personal and real property as is fixed by law. But such renunciation, of course, does not alter the testator's intent with respect to the payment of his debts.

We are of opinion, therefore, that the lower court erred in holding that these several mortgages should not be paid out of the personal estate.

The appellant, Mrs. Rose Simmons Owen, assigns error to the action of the lower court in disallowing a claim which she made against the estate of her brother for services rendered over a period of five years and two months, at the rate of $200 per month, or a total of $12,400, subject to certain credits, leaving a balance claimed to be due of $8,699.

Mrs. Owen testified that in the summer of 1934, at the urgent insistence of her brother, who was then in bad health, she gave up a position at Richmond, moved to his residence in Mecklenburg county, and thereafter until his death, on July 4, 1939, actively aided him in the conduct of his mercantile business and the operation of his several farms. She said that her brother told her that if "I would stay with him as long as he lived and take care of his business that he would see that I was well taken care of; that as long as he lived he would give me anything I wanted, and, when he died, he would see I was well provided for, and I would get a good portion of his estate." She further testified that she accepted this offer and that her brother then promised her, "You will never have to worry about the future because you will never have to work any more, and I will take care of you in my will."

Mrs. Owen's version of this agreement between her and the testator is corroborated by a number of witnesses. The evidence is undisputed that she faithfully carried out the contract on her part and that the charge made by her was reasonable.

It also appears that the brother, during his lifetime, complied with the agreement and furnished her board and lodging and the other necessaries of life, for which she has allowed the estate a credit of $3,701.

The lower court overturned the finding of the commissioner that the claim should be allowed. This was upon the principle that the provision which the testator made for Mrs. Owen in his will was in satisfaction of his debt to her, and that she had treated it as such in electing to take under the will.

■ We are of opinion that the lower court was right in disallowing this claim.

■ It is well settled that a legacy given by a debtor to his creditor, equal to or greater than the debt, is, in the absence of proof of a contrary intention, deemed to be in satisfaction of the debt. If the creditor accepts the legacy, the doctrine of equitable election precludes his recovery of

the claim against the testator's estate. *Swan* v. *Swan*, 136 Va. 496, 516, 517, 117 S. E. 858, and authorities there cited.

Mrs. Owen's claim is that her brother promised to "take care of" her in his will. This he has done, for it is conceded that her distributive share of the personal property alone is approximately the amount of her claim. Besides this, under the fourth paragraph of the will she is given the residence and its furnishings for life, and under the seventh paragraph, she is to share for life in the income of a trust fund derived from the sale of the testator's other considerable real estate.

There is nothing in the will to indicate that the provisions for the benefit of Mrs. Owen were not to be in discharge of her claim.

Moreover, it clearly appears, we think, that Mrs. Owen accepted the provisions in the will in satisfaction of her claim. The claim was not filed until approximately two years after the testator's death, and not until after we had disposed of the former appeal and had held that the widow had effectively renounced the will. This necessarily diminished, by the amount of the widow's distributive share, the net sum of the personal estate which, under the sixth paragraph of the will, was to be divided between Mrs. Owen and her sister. But if the provisions in the will were intended to be in satisfaction of Mrs. Owen's claim, as she at first evidently took them to be, such intent was not affected by the widow's renunciation of the will.

Under the fourth paragraph of the will the residence was devised to the appellant, Miss Rose H. Simmons (now Mrs. Rose Simmons Owen), for life, and she has continued to occupy it since the death of the testator.

Code, section 5124, provides: "Until her dower is assigned, the widow may hold, occupy, and enjoy the mansion house and curtilage without charge for rent, repairs, taxes, or insurance; * * * . If she be deprived of such mansion house and curtilage, she may, on complaint of unlawful entry or detainer, recover the possession thereof, with damages for the time she was so deprived; * * * ."

The lower court decreed that the widow was entitled to recover of Mrs. Owen, as occupant of the residence, the sum of $600 as the fair rental value of the property between the date of the death of the testator and the date on which the widow's dower was assigned. Apparently this was on the theory that the widow had been "deprived of such mansion house" by Mrs. Owen during that time. This holding of the lower court is the subject of the final assignment of error.

While the widow's right to occupy the mansion house between the date of the death of her husband and the time dower is assigned to her is an important right and of ancient origin, dating back to the Magna Charta (1 Minor on Real Property, 2d Ed., section 317, p. 407), it is a right which may be waived and is waived by her voluntary abandonment of the property. Graves' Notes on Real Property, section 314, p. 524; 34 C. J. S., Executors and Administrators, section 331, pp. 27, 28; *Maring* v. *Meeker*, 263 Ill. 136, 105 N. E. 31; *Burks* v. *Osborn*, 9 B. Mon. (Ky.) 579.

It is clear from the evidence before us that the widow did waive or abandon her right to the possession of the testator's residence pending the assignment of her dower. It appears from the record on the first appeal that after the will had been read, the widow discussed the situation with the testator's two sisters, the main beneficiaries under the will. Apparently none of them knew the amount of the estate and Miss Simmons (now Mrs. Owen) and the widow were apprehensive as to how the expenses of the household would be met. Their account of what transpired is practically the same. The widow thought that her rights were defined by the will, under which she was left a cash legacy of $500 and a monthly sum of $25. She at first suggested that she might remain at the residence and contribute to its maintenance out of her small allowance. Miss Simmons agreed to this. Finally, the widow decided that it would be best for her to return to her former vocation, which was

that of a trained nurse, and she voluntarily left the residence and returned to Danville where she sought employment.

It is true, as we held on the former appeal, that at that time the widow did not fully comprehend her rights. But it appears that shortly thereafter she consulted counsel, was fully apprised of her rights, and renounced the will on August 1, 1939. Shortly thereafter she instituted the present suit for the determination of her rights in her husband's estate. There is no allegation in the bill that she had been "deprived" of the mansion house, that she had demanded possession thereof, or had any desire to occupy it, or that she was entitled to the fair rental value thereof.

Moreover, after the commissioner had been directed by the decree of reference to ascertain what damage, if any, she was entitled to by reason of "the withholding of any personal property or real estate from her," she offered no testimony whatsoever in support of the claim.

Under these circumstances, we are of opinion that the commissioner correctly held that there was no evidence before him "that the widow had been deprived of the mansion house or any personal property," and that the lower court erred in overturning this portion of the report.

In accordance with what has been said, the decree will be reversed in part and affirmed in part, and the cause remanded for such further proceedings as may be necessary in conformity with the views expressed in this opinion. The costs of this appeal will be apportioned equally between the appellant, Mrs. Rose Simmons Owen, and the appellee, Mrs. Eudora Eva Whitlow Simmons Lee.

*Reversed in part;*
*Affirmed in part.*

HUDGINS, J., dissenting in part.

Code of 1919, sec. 3528, provides: "In every case in an appellate court, costs shall be recovered in such court by the party substantially prevailing." The decrees, referring the controversy to a commissioner for his findings and report,

contain thirteen specific items and include numerous disbursements made by the executor. The final decrees decided each of these thirteen questions. If there had been no appeal from these decrees, appellants would have had to pay approximately $6,700 before they would have obtained complete title to the real estate devised them. Mrs. Rose Simmons Owen would have been compelled to pay approximately $600, with interest from January 1, 1942, as rent for the residence claimed to have been unlawfully withheld from the widow. The majority opinion declares that the rulings of the trial court on these two specific questions are erroneous.

I do not construe the statute to mean that an appellant must be sustained on each and every error assigned before it can be held that he substantially prevailed in the appellate court. The mere fact that the decision of the trial court is affirmed in all other particulars does not contravene the self-evident fact that the appellants have substantially prevailed in this court. Therefore, the mandate of the statute should be followed and the costs should be awarded against the appellee, Eudora Eva Whitlow Simmons Lee. See cases cited in annotations to Michie's Code 1942, sec. 3528.

I agree with the other principles stated in the majority opinion.