# Richmond.

## MILLER v. ARTHUR & OTHERS.

### JANUARY 21, 1904.

Absent, Keith, P., and Cardwell, J.

1. CONTINGENT DOWER—*Value—Case in Judgment.*—A wife having bought her husband's lands at $12,000, subject to dower, or $15,000, free of dower—"the sale being made in this way in order to fix the dower in said land"—and there being a number of debts paramount to her dower, the value of the contingent dower right is not to be determined in the ordinary way, but she should be charged with $15,000, as the purchase price of the land, and credited by one-fifth of the difference between that sum and the amount of the debts paramount to her dower, as the contract fixed the value of the dower at one-fifth of the whole.

2. APPLICATION OF PAYMENTS—*Case in Judgment.*—A wife became the purchaser at a judicial sale of a tract of land which was part of a trust subject conveyed by her husband to secure his creditors. She had a contingent right of dower in the land worth $2,000. Subsequently, her husband, with a view to buying up his debts at a discount, borrowed a large sum of money from a bank, which was one of the creditors secured. To secure this loan he gave a note with a surety, and his wife afterwards conveyed her contingent right of dower in said land to indemnify and save harmless this surety. Afterwards, at the instance of the surety, she made three semi-annual payments of interest on the balance due on the loan, which payments were accepted by the bank as interest on the loan. The surety, it is alleged, promised that she should have credit for the sums so paid on the deferred payments due by her for the purchase price of the land, but neither the bank nor the trustees for the husband's creditors were parties to any such agreement. Decree was asked for the balance due on the land, and she sought to obtain credit for the payments so made as aforesaid.

*Held*: This was an outside transaction, and she is not entitled to the credit claimed.

3. PAYMENTS BY DEBTOR TO CREDITOR—*Extinguishment—Case in Judgment.*—Payment by one who is primarily liable to one who is entitled to collect the debt is an extinguishment of the debt, and all liability therefor. However held, transferred or assigned, it is ever afterwards a mere nullity. In the case at bar the one who owed the claims paid them with his own means directly to the parties entitled to collect them, and they are not kept alive by the fact that he took receipts in his wife's name.

Appeal from decree of the Circuit Court of Shenandoah county, in several suits in chancery heard together, in one of which appellees were the complainants, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

*John E. Roller* and *Winfield Liggett,* for the appellant.

*Walton & Walton* and *Conrad & Conrad,* for the appellees.

HARRISON, J., delivered the opinion of the court.

J. W. Miller and D. F. Kagey were partners, conducting a banking business at Luray, Virginia, under the firm name and style of D. F. Kagey & Co., and also conducting a mercantile business at Mt. Jackson, Virginia, under the firm name and style of J. W. Miller & Co. Having failed for a very large amount, these two firms, on December 22, 1890, united in a deed of assignment, conveying all their social and individual assets to trustees, to secure numerous creditors, whose aggregate claims amounted to over two hundred thousand dollars. A protracted and complicated litigation followed upon this assignment, involving a number of suits which have been heard together, vol-

umes of evidence, oral and documentary, and numerous reports of commissioners, settling accounts and undertaking to bring order out of the general confusion.

Prior to the date of the assignment mentioned, J. W Miller, one of the grantors, had purchased under the decree in the cause of the *Cecil National Bank* v. *J. W. R. Moore,* a tract of land in Shenandoah county, known as the "Moore Farm." Among the assets dedicated to creditors, this "Moore Farm" was conveyed, subject to the unpaid purchase money due thereon. Shortly after the date of the assignment an account was taken in the cause of *Cecil National Bank* v. *Moore,* showing that J. W. Miller still owed on this "Moore Farm" $8,212.89, as of January 1, 1890.

On the 31st day of August, 1894, the trustees in the general deed of trust sold to Sallie M. Miller, the appellant, the "Moore Farm." This sale was confirmed by decree of September 10, 1894, and a deed was made to the purchaser. Appellant having failed to pay her purchase money, the farm was resold and bought by G. W. Lantz at the price of $18,000.00. The balance due from the appellant on account of her purchase is the subject of the present controversy.

The commissioner, to whom the cause was referred, ascertained that, after allowing all proper credits, including the proceeds of the sale to Lantz, there was a balance due from the appellant on account of her purchase of $1,352.44, as of February 1, 1899. This report was confirmed by one of the decrees appealed from.

The first assignment of error involves a construction of the terms of appellant's purchase. The contention is that, instead of being charged with $15,000.00, as the price agreed to be paid by her for the farm, she should only be charged with $12,000.00, as the purchase price, and with the further sum of $897.43, as the value of her contingent dower in the equity of redemption.

The decree confirming the sale of the "Moore Farm" to the appellant uses the following language in setting forth the terms of her purchase: "For the sum of $12,000.00, subject to dower, and for the price of $15,000.00 without dower. This last sale or price is to apply to those creditors who are entitled to the sale of the farm without dower." The deed to the appellant, which was also confirmed, is to this effect: "At the price of $15,000.00 without dower, and the price of $12,000.00 with dower, the sale being made in this way to fix the dower in said lands." In an elaborate opinion, which is made a part of the record, the learned judge of the Circuit Court, after setting forth the terms of the purchase, as shown by the decree and the deed mentioned, proceeds as follows: "Her dower right is not, therefore, to be ascertained according to the usual method, but it is made part of the terms of her contract of purchase. The only question to be considered is, the proper interpretation of her contract. I adopt the construction that $3,000.00 is fixed as the value of the dower in the whole farm, which is valued at $15,000.00, and that her dower in the equity of redemption is proportionately less. As her dower right is fixed at one-fifth of the whole, her dower in the equity, after the payment of the paramount liens, would be one-fifth of its value. To ascertain the value, deduct from the $15,000.00 the paramount liens, and take one-fifth of the residue." This construction is not only reasonable, but it is the only construction that can be fairly given to the language employed to express the terms of the purchase by appellant. The commissioner, following, it is presumed, this construction, ascertained the value of the dower to be $2,093.29. The account stated, by which this sum was arrived at, is not in the record, and this court cannot, in its absence, hold that the conclusion is erroneous, in opposition to the finding of the commissioner and the approval of that finding by the court. The commissioner properly found, as shown by the extract from his report, which is in the record, that the

$2,093.29 belonged to the National Bank of Baltimore, under a deed of assignment of this dower right by Mrs. Miller to the bank for the indemnity of T. W. Allen. The bank is not here complaining of the amount ascertained to be due on account of dower, and it is not perceived that appellant has any interest in that subject, as the proceeds of the dower belongs to the bank and can in no event reduce the amount due from her on account of purchase money.

The second ground of error assigned is that the court refused to allow appellant credit for three payments of $450.00 each claimed to have been made by her to the National Bank of Baltimore.

It appears that in the spring of 1893 Kagey and Miller borrowed a large sum of money from the National Bank of Baltimore, with a view to buying up their indebtedness at a heavy discount. T. W. Allen became surety for this debt, and on the 7th of April, 1893, Mrs. Sallie M. Miller, the appellant, conveyed to the National Bank of Baltimore, among other claims, her dower interest in all of her husband's real estate, and particularly her dower rights in the "Moore Farm," to indemnify and save harmless T. W. Allen, who had become surety for the large sum borrowed by her husband, and D. F. Kagey. In May, 1894, when this indebtedness was reduced to $15,000.00, Allen was compelled to give his three notes of $5,000.00 each therefor, and to secure the same on a valuable farm owned by him, which was subsequently sold to satisfy the same. It satisfactorily appears from the evidence that the three payments of $450.00 each, which appellant now insists should be credited upon her purchase money, which belongs to the creditors in this case, were the proceeds of notes discounted for the purpose of paying the National Bank of Baltimore the semi-annual interest due to it on the Allen notes, amounting to $15,000.00; that the remittances were directly to the bank and applied at the time in the manner indicated. This transaction by Kagey and Mil-

ler with the National Bank of Baltimore was an outside matter, with which the creditors of the trust fund had no connection, and in which they had no interest. These payments contributed nothing to the trust fund, to which appellant's purchase money belonged, and they should not be permitted to diminish it. The learned judge of the Circuit Court, in disposing of this question, says: "It is insisted by Mrs. Miller that it was agreed between Allen and herself, that she was to have credit on her bonds, which were held by the bank as collateral for this loan. I have refused to sanction this transfer of these bonds in the nature of a collateral, and I cannot see how the court can in any way recognize the loan on which Allen was surety. It is not pretended that the bank was any party to the agreement alleged between Mrs. Miller and Allen. On the contrary, it clearly appears that, under the direction and with the knowledge of all concerned, the bank applied the payments to the discount due on the Allen notes. The money was paid to the bank for that purpose, and I must hold that the alleged understanding between Mrs. Miller and Allen is not a proper subject of enquiry in this litigation." The bonds of Mrs. Miller constituted part of a trust estate to which the creditors of Kagey and Miller were entitled. The debt to which the payments in question were applied was an outside transaction contracted in the name of Allen subsequent to the date of the deed of trust, and not one of the debts entitled to participate in the trust assets. These payments thus made and applied to the accruing interest on the Allen notes were properly rejected as credits upon the purchase money due the trust creditors from the appellant.

The third and last ground of error suggested, is that appellant was not allowed credit upon her purchase money for certain liens against the "Moore Farm," alleged to have been acquired by her.

These claims constituted part of the paramount liens which existed upon the "Moore Farm" at the time of its purchase by

J. W. Miller, and were paid by him during the time that he was in the possession, use and enjoyment of the farm. J. W. Miller was authorized by decree to pay these liens directly to the parties entitled thereto, and the evidence is conclusive that he paid the claims in question from the proceeds of the farm while he owned it, and from the proceeds of his business, as agent for the sale of fertilizer. The record shows that at the time these claims were paid the appellant owned no separate estate which could have been applied to their payment. There is no contention that she owned any estate until her purchase of this farm, which was after the claims had been paid. The evidence of the appellant shows that J. W. Miller made the money and paid the liens; and further shows that at the time of her purchase of the farm she was not aware that her husband pretended to have bought for her any claims against it. When J. W. Miller paid the claims in question, he took receipts in his wife's name, and it is contended that he could thus keep them alive as liens upon the farm for her benefit. This position is not tenable. "It is a well-settled principle that 'payment by one who is primarily liable to one entitled to collect the debt is an extinguishment of the debt and all liability thereunder.' However held or however transferred or assigned, it is ever afterwards a mere nullity." *Smith* v. *Waugh,* 84 Va. 806; *Citizens Bank* v. *Lay,* 80 Va. 436; *Daniel on Neg. Instruments,* secs. 1221, 1222.

In the case at bar the one who owed these claims paid them with his own means directly to the several parties entitled to collect, and it is clear from all the evidence bearing upon the subject, that the appellant is not entitled to credit upon her purchase money, due the creditors in this case, for the claims under consideration.

Upon the whole case, we are of opinion that there is no error in the decrees appealed from, and they must be affirmed.

*Affirmed.*