## Staunton

THE BANK OF RUSSELL COUNTY, ET AL. V. A. T. GRIFFITH, ET AL.

September 5, 1940.

Record No. 2303.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*J. E. Duff*, for the appellants.

*S. H. & Geo. C. Sutherland*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

In October, 1938, The Bank of Russell County and Vicie G. Walker, administratrix of· the estate of George J. Walker, deceased, judgment creditors of A. T. Griffith, a practicing attorney and a member of the Russell county bar, filed a bill in equity in the Circuit Court of that county

against A. T. Griffith and his daughter, Erma Ellen Griffith, the latter being likewise a practicing attorney at said bar, alleging that the transfer, on August 5, 1938, by A. T. Griffith of his law library and office equipment to the law partnership of Griffith & Griffith, composed of A. T. Griffith and Erma Ellen Griffith, was voluntary and fraudulent and was made for the purpose of hindering, delaying and defrauding the creditors of A. T. Griffith. The bill prayed that the conveyance be set aside and that the property be subjected to the payment of the debts due complainants.

The defendants filed a joint answer admitting the complainants' judgments but denying that the conveyance was voluntary or fraudulent and alleging that it was based on a valuable consideration, namely, that Erma Ellen Griffith would assume and pay off certain deed of trust liens on the said property amounting to $580, and that she had fully performed that agreement on August 9, 1938.

The judge of the Circuit Court of Russell county, deeming it improper for him to hear and determine the controversy, transferred the cause to the Circuit Court of Washington county.

Upon consideration of the evidence taken by depositions, the lower court held and decreed:

(1) That Erma Ellen Griffith had a valid lien on the property to the extent of $550.42 with interest, that being the amount which she had paid in purchasing the deed of trust liens thereon, and that her lien was prior to any lien which the judgment creditors had or might acquire on said property; and

(2) That the conveyance of the property by A. T. Griffith to Griffith & Griffith be set aside because it was voluntary and fraudulent as to Griffith's creditors.

The judgment creditors have appealed from that part of the decree which upholds the validity of the lien of Erma Ellen Griffith on the property.

A. T. Griffith and Erma Ellen Griffith assign cross-error to the action of the lower court in setting aside the conveyance of the property by A. T. Griffith to Griffith & Griffith.

It is admitted that in April, 1938, one J. H. A. Smith held deed of trust liens, aggregating the principal sum of $550.42, on the law library and office equipment which were prior to any liens which the judgment creditors could by execution acquire thereon. The appellees claim that prior to the institution of the present suit, Miss Griffith paid to Smith, out of her own moneys, the full amount of the said liens, which were duly assigned to her.

The appellant creditors contend that the money paid to Smith was earned and owned by A. T. Griffith, and was donated by him to his daughter for the purpose of purchasing the said liens. Consequently they say that the alleged purchase by Miss Griffith of the liens was but a scheme, fraudulent in law, to prevent the collection of their claims.

The record discloses that the Smith liens were assigned to Miss Griffith in consideration of the sum of $400 paid on May 21, 1938, and of $150.42 paid on August 9, 1938.

Miss Griffith passed the bar examination in June, 1938. She formed a partnership with her father and began the practice of law on July 23, 1938. Just prior to this she had been a student at Duke University.

Evidently in anticipation of this partnership, in December, 1937, A. T. Griffith and Miss Griffith were employed to represent Madge Mutter in a damage suit. On April 30, 1938, A. T. Griffith, acting for both himself and his daughter, assigned this contract to Smith as additional security for the payment of the deed of trust indebtedness. The Mutter case was settled in May, 1938, and in pursuance of the assignment Madge Mutter gave Smith a check for $440.-21, being the full amount of the fee due under the contract. Subsequently Smith gave Miss Griffith a check for $40.21, which left $400 in his hands to be applied on the deed of trust indebtedness.

Thus it will be seen that no part of the $400 passed through Miss Griffith's hands. Nor is it clear from the record what part thereof, if any, was hers. While Miss Griffith was a party to the Mutter contract it was completely performed before she had been admitted to the bar

and before she was in a position to perform any legal services for her prospective client. Neither does Miss Griffith claim that she engaged in the practice of law in the performance of the contract which she and her father had with Madge Mutter. She testified that she "looked up the law and worked on the theory of the case, and worked up some of the evidence," but that the "actual drawing up of the papers" was under her father's name.

In its written opinion the trial court reached the conclusion that since Miss Griffith had not been licensed to practice law and was not engaged in the practice, she had not received any part of this fee for legal services but that the money was received by her from her father for services rendered to him in assisting in the preparation of the case.

There are two answers to this. In the first place, it is difficult to understand how such services would entitle her to the whole of the fee. In the next place, neither in her testimony nor in her pleadings nor in the briefs filed before us does Miss Griffith make such a contention. Her claim is that the fee was collected by the firm and that she drew out the whole amount as her part of the earnings of the firm and accounted to her partner, that is, her father, therefor.

But Miss Griffith's contention likewise runs into difficulty. The uncontradicted evidence is that the whole of the Mutter fee of $440.21 was paid direct by Madge Mutter to Smith pursuant to the assignment of the contract which Griffith had made. While Smith rebated to Miss Griffith a small portion of the fee, $40.21, the net amount of $400 received by Smith, for which Miss Griffith claims credit, was never paid into the firm and did not pass through her hands. The situation is exactly the same as if Griffith had paid the sum of $400 to Smith.

On August 9, 1938, Miss Griffith gave Smith her check for $150.42, being the balance due him on the deed of trust debts. She admitted that this amount was withdrawn by her from the firm and consisted principally of a fee which was earned in representing W. J. Griffith and Emily Griffith.

The record discloses that this latter contract of employment, like that with Madge Mutter, was made before Miss Griffith had commenced the practice of law. The Griffith fee was assigned to Smith by A. T. Griffith on May 21, 1938. The record is silent as to whether this fee was collected before Miss Griffith commenced the practice of law. Certainly she made no claim to have done any work on the case.

It is most significant that A. T. Griffith failed to testify in the lower court. He was, of course, familiar with the matter and could have disclosed whether the Griffith fee was earned by him alone or by his firm. He knew that the daughter's claim that the money was hers was being assailed. And yet he remained silent. "When one possesses knowledge vital to his own case and fails to declare it, his silence speaks louder than the voice from the house top." *Lipman* v. *Norman Packing Co., Inc.*, 146 Va. 461, 473, 131 S. E. 797, 800.

Neither were the firm's books offered in evidence to show when the Griffith fee was earned, when it was divided between the partners, and if so, in what proportion.

We find here, then, two elements commonly referred to as badges of fraud, namely, the failure to examine as a witness the person having the best opportunity to know the facts, and the failure to produce books and documentary evidence which carry proof of the transaction. *Hutcheson* v. *Savings Bank of Richmond*, 129 Va. 281, 291, 105 S. E. 677.

While it is true that the burden of proving fraud is on him who alleges it, where the transaction assailed is between father and daughter or other near relatives, "only slight evidence is required to shift the burden of showing its *bona fides*." *Lipman* v. *Norman Packing Co., Inc., supra* (146 Va., at pages 467, 468, 131 S. E., at page 798). See also, *Fowlkes* v. *Tucker*, 164 Va. 507, 514, 180 S. E. 302, 305; *National Valley Bank* v. *Roudabush*, 170 Va. 528, 532, 197 S. E. 484, 486.

Under the circumstances of the instant case, in the absence of proof that the Griffith fee was earned by the firm in which the daughter had an interest, we must conclude that it was earned entirely by the father. Moreover, the daughter's withdrawal of this money from the firm, with the permission of the father, was in effect a voluntary transfer of the fund by him to her and was void as to his creditors.

█ Our conclusion, then, is that both payments to Smith came from the funds of A. T. Griffith and not from the moneys of his daughter. Hence, there was no consideration for the transfer to Miss Griffith of the liens on the property and she acquired no interest therein.

██ Since the funds of A. T. Griffith, the debtor, were paid to Smith, the creditor, this amounted to an extinguishment of the deed of trust debts and all liability thereunder. "It is a well-settled principle that payment by one who is primarily liable to one entitled to collect the debt is an extinguishment of the debt, and all liability thereunder. However held or however transferred or assigned, it is ever afterwards a mere nullity." *Smith* v. *Waugh*, 84 Va. 806, 808, 6 S. E. 132. See also, *Citizens Bank* v. *Lay*, 80 Va. 436, 440; *Miller* v. *Arthur*, 102 Va. 356, 362, 46 S. E. 323.

█ As to the assignment of cross-error, we think the lower court correctly held that the transfer by A. T. Griffith of the property in question to the firm of Griffith & Griffith was without consideration and was void as to Griffith's creditors. The only consideration claimed was the purchase by the daughter of the liens from Smith, and this claim, as we have seen, is not well founded.

The decree complained of will be reversed and the cause will be remanded to the lower court for further proceedings in conformity with this opinion.

*Reversed and remanded.*