# Richmond

## T. Dan Thompson, Jr., and Another v. H. Hessy Miller, et al.

January 25, 1954.

Record No. 4163.

Present, Hudgins, C.J., and Eggleston, Miller, Smith and Whittle, JJ.

514

The opinion states the case.

*Douglas A. Robertson, S. H. Williams* and *Williams, Robertson & Sackett*, for the appellants.

*E. Marshall Frost, S. G. Hammer, Royston Jester, Jr.; Caskie, Frost, Davidson & Watts; Edmunds, Whitehead, Baldwin & Graves* and *Cecil W. Taylor*, for the appellees.

SMITH, J., delivered the opinion of the court.

On November 20, 1951, the trustee in a deed of assignment for the benefit of the creditors of Lynchburg Building Block, Incorporated, filed a bill in chancery seeking the advice and instruction of the court in determining certain liens and priorities, and, in particular, whether a certain deed of trust, hereafter described, was a lien on the real estate of the corporation. The appellants, who claim the lien of this deed of trust, were awarded this appeal from the decree of the trial court entered January 7, 1953, which confirmed the commissioner's report and held that the debt secured by the deed of trust had been paid, and that the lien was thereby released and should be marked satisfied.

Appellants, T. Dan Thompson, Jr., and H. Hall Hardenbergh, Jr., sometimes hereafter referred to as the partnership and sometimes as appellants, on February 17, 1947,

while trading and doing business as the Lynchburg Building Block Company, executed a deed of trust on the real estate and personal property owned by the partnership to secure to the Lynchburg National Bank and Trust Company, hereinafter referred to as the bank, the payment of (1) a debt of $5,000 of even date therewith, which has been paid and is not in controversy on this appeal and (2) any and all sums of money, not exceeding $5,000, which might be advanced or loaned pursuant thereto within three years from the date thereof. In accordance with this provision of the deed of trust, the bank advanced a total of $5,000 to the partnership, which was evidenced by two notes made by the partnership and endorsed by the partners, one for $3,000 and the other for $2,000.

Lynchburg Building Block, Incorporated, in which appellants owned a two thirds interest, was incorporated on March 29, 1948; and on April 15, 1948, the appellants sold all the assets of the partnership to the corporation in consideration for which the corporation paid $14,000 cash and, by a duly executed written agreement, assumed and bound itself to pay all the liabilities of the partnership. The consideration for and good faith of this conveyance are not challenged in this litigation.

The two notes evidencing the $5,000 debt secured under the deed of trust were renewed from time to time during the existence of the partnership and later by the corporation, and on August 4, 1949, the corporation renewed and merged them with a $2,000 unsecured note into a $7,000 note. This corporate note, which was endorsed by Thompson and Hardenbergh, was not paid when it became due and the bank protested it on October 17, 1949, thus fixing the liability of the endorsers. Thompson paid the bank on October 18, 1949, for himself and Hardenbergh and received the note from the bank. It is conceded that the $5,000 debt which the corporation assumed was included in and constituted a part of the $7,000 corporate note which was endorsed and paid by appellants.

The appellants contend that when they paid the corporate note they succeeded, under the equitable doctrine of subrogation, to all the rights of the bank in the valid deed of trust as security for the loan. The appellees, who are the trustees and certain creditors under the deed of assignment, deny this claim and say that: (1) a novation was effected when the bank accepted the corporation's note in place of the original notes and that the security held by the bank was released as a matter of law; or (2) when the appellants paid the corporate note they were paying a renewal of an original note on which they were primarily obligated; and that under either view of the transaction there could be no basis for the application of the doctrine of subrogation.

The report of the commissioner, confirmed by the trial court, found "that the renewal of the partnership note by the corporation which assumed it, was not a novation of the original debt, and the collateral held by the creditor was not released or affected thereby."

We said in *Waynesboro Bank* v. *Smith*, 151 Va. 481, 491, 145 S. E. 302:

"In *Van Nostrand & Co.* v. *Virginia Zinc etc., Co.*, 126 Va. 311, 101 S. E. 65, it is said: 'A mortgage secures a debt, and not the note, or bond, or other evidence of it. No change in the form of the evidence, or the mode or time of payment—nothing short of *actual payment of the debt*, or an express release—will operate to discharge the mortgage. The mortgage remains a lien until the debt it was given to secure is satisfied, and is not affected by a change of the note, or by giving a different instrument as evidence of the debt, or by a judgment at law on the note merging the original evidence of indebtedness, or by a recognizance of record taken in lieu of the mortgage note.'

"In 2 Minor's Inst. (2d ed.), 316 we read: 'As long as the debt remains, however changed may be the security (as in case of negotiable notes secured by mortgage, and

renewed from time to time), the mortgage continues to subsist.' "

The changes made in the form of the evidence of the $5,000 debt here involved were renewals as expressly provided in the deed of trust ("Renewal or extension permitted") and the evidence clearly shows that such renewals were not intended as an extinguishment of the original debt or a discharge of the mortgage that secured it. Code, § 55-60 (5); *Mitchell* v. *Cox*, 189 Va. 236, 52 S. E. (2d) 105; *Wyoming County Bank* v. *Nichols*, 101 W. Va. 553, 133 S. E. 129.

This brings us to the appellees' second contention that when the appellants paid the bank they were paying a renewal of an original note on which they were primarily obligated and therefore the lien of the deed of trust was extinguished. They concede that as between the corporation and the appellants, the corporation is primarily liable and the appellants are secondarily liable, but contend, however, that "we are not dealing with the relationship between the corporation and Thompson and Hardenbergh, but the relationship between the bank and Thompson and Hardenbergh. Regardless of what they did after jointly signing the note, the bank could still look to them first for the payment. Nothing they [appellants] subsequently did could change their original status of being primarily liable to the bank."

*Smith* v. *Waugh*, 84 Va. 806, 6 S. E. 132, is relied on to support this contention. Smith sued to enjoin the enforcement of a judgment recovered against him by J. E. Williams, the administrator *d. b. n.* of Waugh on a bond executed by one Snead on which Smith was surety, payable to Davis, the administrator of Waugh. The court held that the bond found among the papers of Davis after his death, had been paid by Snead, the debtor, to Davis, the administrator and proper person to collect, and that Davis had paid and satisfied all claims of the beneficiaries in and to the entire estate of Waugh. The court there said: "It is a

well-settled principle that payment by one who is primarily liable to one entitled to collect the debt is an extinguishment of the debt, and all liability thereunder. However held or however transferred or assigned, it is ever afterwards a mere nullity."

This principle was applied in *Miller* v. *Arthur*, 102 Va. 356, 362, 46 S. E. 323, and *Bank of Russell County* v. *Griffith*, 176 Va. 1, 8, 10 S. E. (2d) 481. None of these cases, however, deals with the payment of a debt by one *secondarily* liable, but in each case the debtor *primarily* liable for the debt paid it with his own money to the one· entitled to collect. The payment extinguished the debt and discharged the obligation, and the attempts to transfer or assign the evidence of debt after such payment passed nothing.

The long established rule in this State, and so far as we are able to determine the universal rule, is that when a grantee covenants in a conveyance of land to assume and discharge an existing mortgage thereon as a part of the purchase price, he thereby becomes the principal debtor for the payment of the encumbrance, and the grantor is thenceforth merely a surety for the debt. *Owen* v. *Lee*, 185 Va. 160, 37 S. E. (2d) 848; *Hofheimer* v. *Booker*, 164 Va. 358, 180 S. E. 145; *Livermon* v. *Lloyd*, 155 Va. 940, 157 S. E. 146; *Osborne* v. *Cabell*, 77 Va. 462; *Willard* v. *Worsham*, 76 Va. 392. See also, *Hubard & Appleby* v. *Thacker*, 132 Va. 33, 110 S. E. 263, 21 A. L. R. 423.

The *Hofheimer* case, *supra*, illustrates the extent of this rule. There the mortgagee who had knowledge of the conveyance from the mortgagor to the grantee, entered into a binding extension of time for the payment of the debt with the grantee without the consent of the mortgagor. It was held that the assuming grantee was in the position of a principal debtor as to the mortgagee, and the mortgagor was in the position of a surety and therefore the extension of time for payment without the consent of the

mortgagor-surety discharged him. See, however, Code, § 55-60 (5).

Professor Lile in his Notes on Equity Jurisprudence, at page 170, states the rule thus: "Where one purchases an estate under mortgage, and (expressly or impliedly) *assumes payment of the mortgage*, he becomes, as between himself and the mortgagor, the principal debtor, while the mortgagor (originally principal debtor) becomes surety, with all of a surety's rights.

"For example, extension of time, for valuable consideration, by the mortgagee to the purchaser, or other change in terms of the contract, *with knowledge of the situation*, and without consent of the mortgagor will release the latter from further liability. Or should the mortgagor be sued on his personal covenant and be compelled to pay the debt, he is entitled to subrogation to the lien of the mortgage." *Accord*, Glenn on Mortgages, §§ 259, 273.

This rule finds support in many decisions, among which is the recent case of *Smith* v. *Mangels*, 73 Ariz. 203, 240 P. (2d) 168 (1952), where it was said:

"It is a universally recognized rule that a mortgagor, who after having conveyed his interest is compelled to pay the principal debt, is equitably subrogated to the mortgagee's interests and succeeds to the mortgagee's rights. Some courts state this to be an equitable subrogation and some an equitable assignment. Notwithstanding the distinction, all courts agree that whatever rights the mortgagee had, payment by the mortgagor substitutes the mortgagor to the rights of the mortgagee. This is true both as to real and chattel mortgages." (Citing cases).

The equitable doctrine of subrogation is described in Lile's Notes on Equity Jurisprudence, at page 164, thus: "Whenever one person is compelled to pay a debt or discharge an obligation *for which he is only secondarily liable, in person or in property*, and hence has *recourse over against the person or the property primarily liable*, for exoneration or contribution, a court of equity will subro-

gate the person thus secondarily liable to the position of the *creditor whom he has satisfied,* as to every *lien, preference or other special advantage* possessed by the latter at the time of such payment." Approved in *Aetna Casualty and Surety Co.* v. *Whaley,* 173 Va. 11, 15, 3 S. E. (2d) 395, and *French* v. *Stange Mining Co.,* 133 Va. 602, 114 S. E. 121.

When Thompson and Hardenbergh conveyed the mortgaged partnership property to the corporation and accepted, as a part of the consideration, the covenant of the corporation to assume and satisfy the mortgage debt, their relation to the debt was changed from principals to sureties. This relationship continued and the appellants' rights to be subrogated to the rights of the bank were determined at the time the corporate note was paid. Lile's Notes on Equity Jurisprudence, pp. 174, 175; 83 C. J. S., Subrogation, § 11, p. 610.

The relationship of principal and surety created between the appellants and the corporation did not deprive the bank of any of its rights against appellants. The bank was entitled to collect its debt and had the right to proceed against the maker or endorsers of the corporate note or to avail itself of the mortgage securing such debt. However, equity requires that the appellants, upon payment of this debt out of their own funds, be subrogated to the "special coign of advantage" held by the mortgagee-bank so that they may reimburse themselves by recourse to the mortgaged premises. This cannot prejudice the bank, and it is clearly equitable as between the appellants and the owner of the land, the corporation. *Aetna Casualty & Surety Co.* v. *Whaley,* 173 Va. 11, 3 S. E. (2d) 395; Lile's Notes on Equity Jurisprudence, p. 167.

Finally, appellees argue that since subrogation is not a matter of absolute right but is to be granted or withheld as the equities of the case may demand, it would be inequitable to grant appellants this relief on the evidence before us. This argument is based on the fact that appellants en-

cumbered partnership property which they sold for a cash profit to a corporation in which they owned two thirds of the stock; that the corporation borrowed additional money, became financially involved and finally insolvent.

While Virginia has long been committed to the liberal application of subrogation to the exigencies of particular cases, it is not a matter of absolute right but is granted or withheld as the equities of a particular case may require. *Federal Land Bank* v. *Joynes*, 179 Va. 394, 18 S. E. (2d) 917. Illustrations of the denial of subrogation where it would have worked an injustice may be found in 50 Am. Jur., Subrogation, § 11, p. 690; 83 C. J. S., Subrogation, § 6, pp. 594-598.

There is nothing inequitable in the fact that the appellants, as partners, incurred a part of the indebtedness here involved in the development of the partnership business which they then sold to a corporation in which they were interested. The evidence shows that the transfer of the partnership property to the corporation was a bona fide sale, at a fair price and free of fraud, unfair dealing, bad faith, or unconscionable conduct which would deny appellants subrogation to the rights of the bank. Furthermore, all the creditors of the corporation are presumed to have extended credit to the corporation with notice of the deed of trust which was executed and recorded before the corporation came into existence. When they extended credit they knew or should have known that their claims were subordinate to the lien of the deed of trust and that no claim could arise above that lien. There is no evidence in the record that shows that any of the creditors of the corporation have equities superior to those of the appellants who are therefore entitled to be subrogated to the rights of the bank under the deed of trust securing the $5,000 debt at the time it was paid by them.

For the reasons stated the decree appealed from is reversed and the case remanded with directions to the trial court to award T. Dan Thompson, Jr. and H. Hall Harden-

bergh, Jr. the benefit of the deed of trust lien formerly held by the Lynchburg National Bank and Trust Company on the property of the Lynchburg Building Block, Incorporated, to the extent of $5,000 and interest thereon from the date it was paid by them to the bank.

*Reversed and remanded.*