**In the Matter of Clifford Hurt WORLEY, Bankrupt.**

**No. 799.**

United States District Court
W. D. Virginia,
Charlottesville Division.

March 28, 1966.

Robert P. Boyle, Charlottesville, Va., for trustee in bankruptcy.

Jack N. Kegley, Charlottesville, Va., for petitioner.

George R. St. John, Charlottesville, Va., for bankrupt.

MICHIE, District Judge.

This case comes before the Court upon a petition for review of an order entered by the Referee in Bankruptcy on July 27, 1964, disallowing the claim in bankruptcy of the petitioner, Mrs. Myrtle Worley, wife of the bankrupt, Clifford Hurt Worley.

The facts are not in dispute. In 1959 the bankrupt owed a debt of $2,370.48, secured by a deed of trust on the Worleys' residence on Poplar Street in Charlottesville, Virginia. This residence has at all times pertinent to this decision been owned jointly by the bankrupt and the petitioner as tenants by the entirety.

In 1959 the bankrupt and the petitioner executed a new deed of trust on the Poplar Street residence and on certain lakefront lots and a cottage located thereon (the lake property was owned by the bankrupt individually) to secure a $12,000.00 promissory note given jointly by Mr. and Mrs. Worley to The Peoples National Bank of Charlottesville. The proceeds of this loan from the bank were used in part to pay off the pre-existing debt of $2,370.48 and the balance went into expenses incurred by Mr. Worley in his business.

On September 22, 1961, the bankrupt and the petitioner executed a second deed of trust on the Poplar Street and lake properties to secure a demand bearer bond given jointly by them to the Charlottesville Hardware Company in the amount of $5,474.86 for plumbing supplies used by the bankrupt in his business.

Sometime after the execution of the first and second deeds of trust the Internal Revenue Service obtained judgments against the bankrupt aggregating $7,649.89. The bankrupt was therefore heavily indebted when, shortly prior to April, 1963, the cottage on the lake property was destroyed by fire. The insurance proceeds under a policy covering the cottage amounted to $10,573.82 and a dispute arose among the holders of the first and second deeds of trust and the Internal Revenue Service as to how the proceeds of this insurance policy should be applied, due to the fact that the insurance policy did not contain a loss-payable clause in favor of the holder of the instrument secured by either of the deeds of trust.

In order to pay off these creditors, the bankrupt and the petitioner executed a new deed of trust on the Poplar Street property to secure a note given by them to the Virginia Building and Loan Association in the amount of $8,500.00. This $8,500.00 and the insurance proceeds were used to pay off the note secured by the first deed of trust, which stood at that time in the amount of $9,219.63; to pay the holder of the hardware company bond the face amount of the bond, $5,474.86; and to pay off the Internal Revenue Service judgments which were settled for $3,629.72 and five small claims and costs amounting to a total of $749.61.

During the negotiation of this overall settlement by the parties Mrs. Worley indicated a reluctance to increase her indebtedness by executing a new deed of trust on the Worleys' home and an attorney for one of the creditors suggested that, in order to compensate Mrs. Worley for what the parties felt would be a worsening of her position, the $5,474.86 bond be assigned by the hardware company to Mrs. Worley upon receipt by the hardware company from the Worleys of the amount due on the bond. This plan was carried out and the petitioner was

assigned the bond by the hardware company without recourse, secured by the second deed of trust on the lake property.

Shortly thereafter, on September 25, 1963, the petitioner's husband was adjudged a bankrupt upon a voluntary petition. The petitioner was listed as a secured creditor of the bankrupt on the basis of the bond assigned to her by the hardware company and the second deed of trust which secured it, and it is the allowance of the petitioner's claim on this bond which is now in controversy.

The petitioner's claim is predicated upon the theory that she was originally only an accommodation maker of the bond and that, having given value for the assignment of the bond to her by executing the new note and deed of trust on the Poplar Street property, she is a purchaser of the bond entitled to enforce it on its face against the estate of the bankrupt. There is no doubt that this was the intention of the parties to the settlement.

■ The parties overlooked, however, the effect of the Virginia law which requires the conclusion that the hardware company bond was discharged when paid in the hands of the hardware company by the Worleys at or after maturity. Under the Virginia negotiable instruments law in effect at the time of the transactions in question,[1] both the petitioner and her husband, who signed the instrument as co-makers, were absolutely required to pay it by its terms, Va.Code Ann. § 6–412 (1950), and were parties "primarily" liable, § 6–545. Accordingly, the instrument was discharged when it was paid by the Worleys, § 6–472(1),[2] and this is true even though Mrs. Worley be considered an accommodation maker, see § 6–381. The purported assignment to Mrs. Worley was a nullity, as all obligations flowing from the instrument itself were extinguished with its payment by the Worleys in the hands of the hardware company. This has long been the law in Virginia and elsewhere, under general principles of suretyship as well as the negotiable instruments law. See Gilmer v. Woodson, 332 F.2d 541, 548 (4th Cir. 1964); Thompson v. Miller, 195 Va. 513, 517–518, 79 S.E.2d 643, 646 (1954) (dictum); Grizzle v. Fletcher, 127 Va. 663, 667–668, 105 S.E. 457, 458 (1920); Cussen v. Brandt, 97 Va. 1, 9, 32 S.E. 791, 793 (1899) (dictum); Kendrick v. Forney, 63 Va. (22 Grat.) 748, 753 (1872); Perkins v. Hall, 123 W.Va. 707, 17 S.E.2d 795, 800–802 (1941) (purported assignment to an accommodation maker).

■■ It is true that in Virginia, by statute, a surety or other party secondarily liable, upon payment of the debt of his principal, may be substituted to and become the owner of all of the rights and remedies of the creditor for the enforcement and collection of the amount or amounts so paid, and shall be deemed the assignee thereof. Va.Code Ann. § 49–27 (Repl. vol. 1958). And equity will allow the surety to treat the original debt to the creditor as still subsisting and to be subrogated to the rights of the creditor for the repayment of any funds expended on behalf of the principal if the creditor possessed any special coign of advantage such as the deed of trust which secured

---

1. Virginia adopted the Uniform Commercial Code in 1964, effective January 1, 1966. Acts of Assembly, 1964, c. 219, as codified, Va.Code Ann. § 8.1–101 et seq. (Added vol. 1965). The provisions of the old negotiable instruments law cited herein were simultaneously repealed.

2. § 6–472(1) speaks in terms of discharge of the instrument when paid by or on behalf of the "principal debtor." There appears to be no reason to distinguish between the terms "principal debtor" and "person primarily liable", however. § 6–474 provides that a party "secondarily liable" who pays the instrument does not thereby discharge it but may again negotiate it. The term "person secondarily liable" as used in §§ 6–474 and 6–473 is clearly in opposition to the term "principal debtor" as used in § 6–472(1). The Virginia case law continues to state the rule that payment of an instrument by a party primarily liable extinguishes the debt and all liability thereunder. See, e.g., Thompson v. Miller, 195 Va. 513, 517–518, 79 S.E.2d 643, 646 (1954) (dictum).

the hardware company in the instant situation. Aetna Cas. & Surety Co. v. Whaley, 173 Va. 11, 16, 3 S.E.2d 395, 396–397 (1939). These rights are not based upon the instrument evidencing the original obligation, however; they are merely additional remedies given to enforce the implied obligation of the person whose primary duty it was to pay the debt, as between the two obligors. Perkins v. Hall, supra, 17 S.E.2d at 801. Thus the surety or accommodation party is entitled to use these methods to collect whatever he has paid, and only that amount. See Dickenson v. Charles, 173 Va. 393, 400, 4 S.E.2d 351, 353 (1939). On the foregoing authorities, therefore, I conclude that the petitioner is not entitled to prove a claim in bankruptcy for the face amount of the bond since the attempted assignment of the instrument to her was ineffective as a matter of law.[3]

This brings me to the nub of the petitioner's claim. What has Mrs. Worley paid that, as between her and the bankrupt, he should have paid? The petitioner's remedy, if any, lies in her right to indemnification by her husband for anything she has paid on his behalf, assuming that she was originally only an accommodation party on the bond as she contends and is therefore only secondarily liable as between her and the bankrupt (or in her right to contribution for anything over one-half the obligation she has paid if she was not an accommodation party). If she was an accommodation maker and therefore only a surety as between herself and her husband, under the Virginia law she would be entitled to the lake lots as security up to the amount she has paid by reason of either the statutory or equitable remedies set forth above. Thus, Mrs. Worley would be entitled to prove as a secured creditor in bankruptcy up to the amount which she has paid.

■■ Upon a careful examination of the transaction, however, I am unable to find any payment by the petitioner which would allow her a claim against her husband's bankruptcy estate. The burden rests upon the surety to prove the amount he has paid on behalf of his principal. E. g., Barksdale v. Fitzgerald, 76 Va. 892, 896 (1881). Mrs. Worley has been unable to show that she has parted with one cent of her own assets. The hardware company bond was paid from the proceeds of the fire insurance policy or from the funds obtained by the new $8,500.00 loan. The record does not specify which fund was used to pay any particular debt in the overall settlement. If the hardware company was paid from the proceeds of the fire insurance, then clearly Mrs. Worley has paid nothing on the bond as the insurance proceeds from the cottage on the lake lots are attributable entirely to her husband's personal estate as he was the sole owner of the lake lots. If the bond was paid from the proceeds of the new loan, then Virginia law appears to compel the conclusion that these funds constituted entirety assets attributable to neither the bankrupt nor Mrs. Worley individually. In Oliver v. Givens, 204 Va. 123, 129 S.E.2d 661 (1963), the Virginia Supreme Court of Appeals held that cash proceeds from the sale of property held as tenants by the entirety were also held in tenancy by the entirety, absent an agreement or understanding to the contrary. No contrary agreement or understanding has been suggested in the present case, and it would be difficult to distinguish between cash proceeds from the sale of property, as in Givens, and the cash proceeds obtained by a loan secured by entirety property in this case.

Leaving aside the entirety question, however, I think the fact that the petitioner has clearly made no payment from her separate estate is sufficient to defeat

---

3. The Uniform Commercial Code now gives an accommodation party a right of recourse on the instrument itself against the accommodated party if the accommodation party pays the instrument. Va. Code Ann. § 8.3–415(5) (Added vol. 1965).

The Commercial Code provides for the discharge of parties to the instrument, not for the discharge of the instrument itself. See Va.Code Ann. § 8.3–601 and the official and Virginia comments thereto (Added vol. 1965).

her claim in bankruptcy. Mrs. Worley, from the Referee's findings of fact, never had a separate estate of her own. The consideration for her home was furnished by her husband, although the home was owned by the entirety. $8,500.00 was borrowed on this home with Mr. and Mrs. Worley signing the note as joint obligors. But the petitioner has never parted with any of her own money. She had been joining as a co-maker with her husband in executing obligations secured by deeds of trust on her home since 1959 at the latest. When payment on these earlier obligations was demanded, Mr. Worley had insufficient funds to pay the entire amount plus the Internal Revenue Service judgments. He and the petitioner therefore obtained a new loan to pay off the old debts. The Worleys were borrowing from Peter to pay Paul. Surely it would not be contended that Mrs. Worley paid the hardware company bond if she and her husband had merely extended the time for payment of that obligation. Yet this is in effect exactly what was done. Instead of extending the old obligation a new one was incurred to pay off the old debt.

■ It is against this overall background of serialized loans that the transaction in question must be viewed, and not by looking to this one transaction and finding payment by Mrs. Worley. Normally, of course, a surety cannot be denied the right to be reimbursed for his payment on behalf of his principal merely because the surety has borrowed the money with which he paid the principal's debt. But in the instant case there is no assurance, indeed there appears to be relatively little chance, that the petitioner will ever be called upon to make any payment from her own assets, i. e., that she will see her home sold to satisfy this last $8,500.00 obligation. Mrs. Worley testified before the Referee that she always looked to her husband to pay the debts for which she became jointly obligated. Undoubtedly she continues to look to her husband for payment of this latest note, for the record indicates she has no assets of her own other than her undivided interest in her home. It is this situation which makes the allowance of her claim indefensible in the mind of the Court. The petitioner has continually assisted her husband in his business enterprises by signing her name to the instruments which made it possible for the bankrupt to carry on his business and she has continually allowed her home to be used as security for these debts. But she has never been called upon to pay these obligations from her own assets. Her husband's bankruptcy should not allow her a profit. To allow her claim at this point would amount to a windfall to Mrs. Worley while denying payment to the bankrupt's legitimate general creditors who have suffered actual losses in dealing with the bankrupt. Such a result cannot be tolerated under the basic principles of the Bankruptcy Act. Until her husband is unable to pay the final obligation in the series, and until the petitioner is required to part with some of her own assets, she is not entitled to indemnification (or contribution if she was not an accommodation party in executing the note) from her husband's bankruptcy estate.

The petitioner has presented an involved calculation to the Court which tends to show that, had she refused to execute the new $8,500.00 note with her husband to pay off the old debts, the payment by the bankrupt of part of the debts from the insurance proceeds would have left an obligation of less than $8,500.00 against Mrs. Worley's home. It is thus contended that Mrs. Worley worsened her position by the transaction and should be allowed reimbursement for it. Whatever the merit of the calculation, however, it is clear that the petitioner still has paid no indebtedness from her own assets. Nor is her calculation persuasive to show that she actually worsened her position. Immediately prior to paying off the old debts she was obligated jointly with her husband to pay debts totalling $14,694.49, and this amount was secured by deeds of trust against her home. Her overall debt was *reduced* to $8,500.00, and, unlike the old debts, this new obligation does not

mature until 1976. A very valuable extension of time was therefore received by the petitioner and her husband. Secondly, the petitioner was quite plainly benefitted by seeing that the old deeds of trust against her home were paid in full without any actual payment on her part, inasmuch as those parties would have had the right to enforce any unpaid amount of the debts due them against Mrs. Worley's home.

Since the assignment of the hardware company bond to Mrs. Worley was ineffective to give her a claim on the face of the instrument against the bankrupt, and since Mrs. Worley has made no payment on behalf of her husband for which she would be entitled to demand indemnity or contribution from Mr. Worley's bankruptcy estate, the order of the Referee disallowing the petitioner's claim in bankruptcy will be affirmed. An order will be entered in accordance with the rationale of this opinion.