934 F.2d 319
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
MERIDIAN TITLE INSURANCE COMPANY, Plaintiff-Appellant,
v.
LILLY HOMES, INCORPORATED, Frederick V. Lilly, II,
Defendants-Appellees,
v.
Joseph H. CHOPP, Jr., U.S. Titles, Incorporated, R.H.
Driscoll Development Corporation, Third Party
Defendants-Appellees.
 No. 90-2381.
 United States Court of Appeals, Fourth Circuit.
 Argued April 8, 1991.
Decided June 5, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-89-1078-A)
 Ann Adams Webster, Morris and Morris, P.C., Richmond, Va. (Argued), for appellant; Phillip B. Morris, Morris and Morris, P.C., Richmond, Va., on brief.
 Robert J. Segan, Kass, Skalet, Segan & Spevack, P.C., Annandale, Va. (Argued), for appellees; Donna M. Mason, Kass, Skalet, Segan & Spevack, P.C., Annandale, Va., Gerard R. Walsh, Robert F. Donnelly, Jr., James A. Watson II, Surovell, Jackson, Colten & Dugan, Robert A. Payne, Fagelson, Schonberger, Payne & Arthur, Fairfax, Va., on brief.
 E.D.Va., 735 F.Supp. 182.
 AFFIRMED.
 Before PHILLIPS and WILKINSON, Circuit Judges, and CLYDE H. HAMILTON, United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Meridian Title Insurance Company (Meridian) appeals the district court's order dismissing its subrogation claim for breach of warranty in a deed from Lilly Homes, Inc. (Lilly Homes) to its insured, Veronica Cahill (Cahill).[1] The district court concluded that it would be inequitable to permit Meridian's subrogation claim because of Meridian's agent's negligence and prejudice to the subsequently intervening rights of Lilly Homes. Accordingly, the district court dismissed the breach of warranty claim at the conclusion of Meridian's case. Rules 41(b) and 52, Fed.R.Civ.Proc. We affirm.
 
 I.
 
 2
 In 1983, Lilly Homes and R.H. Driscoll Development Corp. (Driscoll Development) entered into an oral agreement to form a joint venture for the purpose of acquiring building lots, constructing homes thereon, and selling the homes. After six lots were acquired and three homes were built, the venture was orally terminated in 1984, and the three remaining lots were divided. Two went to Lilly Homes and one went to Driscoll Development, with each company to receive full interest in each lot and accept full responsibility for the balance of loans on the lot(s) they received.
 
 
 3
 Lilly Homes signed a deed conveying its interest in the lot assigned to Driscoll Development. The loan on that lot was paid at that time, and a settlement statement showed no amounts owing from Lilly Homes or the joint venture to Driscoll Development. Lilly Homes subsequently wrote its construction lender asking it to take Driscoll Development off the title and construction loans for lots 6 and 14 in Sugar Mill Meadows, the two lots it received when the joint venture terminated. The lender, Epic Mortgage (Epic), inadvertently failed to carry out this request.
 
 
 4
 In the summer and fall of 1985, Lilly Homes built a home on lot 14, Sugar Mill Meadows, without any contribution, financial or otherwise, from Driscoll Development. This property was sold to Veronica Cahill.
 
 
 5
 The contract was placed through two real estate brokerage firms, Chain Bridge Realty and Town and Country Properties. Cahill, agent for Chain Bridge Realty, selected Joseph Chopp (Chopp) to be the settlement attorney. Chopp was hired to handle the closing for both Cahill, as purchaser, and Lilly Homes, as seller.
 
 
 6
 Chopp hired U.S. Titles, Inc. (U.S. Titles) to conduct the only title search done on the property. U.S. Titles performed the search and prepared the title insurance binder for Meridian. U.S. Titles performed similar services for Meridian on a regular basis.
 
 
 7
 The title search noted that the last deed on lot 14 vested title in Lilly Homes and Driscoll Development as joint venturers. This fact was recorded on the cover sheet of the abstracter's report. In preparing the title insurance binder, however, U.S. Titles failed to include Driscoll Development in the "vesting clause" of the binder. Only Lilly Homes was listed as possessing an ownership interest in the property. The binder and cover sheet were reviewed by agents of U.S. Titles, but the error was not discovered. The binder was sent to Chopp, who did not detect the error. Based on the binder, he prepared a general warranty deed listing Lilly Homes as the sole grantor of lot 14 to Cahill.
 
 
 8
 Settlement of the sale to Cahill occurred on November 13, 1985. Frederick Lilly signed the deed on behalf of Lilly Homes. The deed was taken to Margaret Ball to notarize. Margaret Ball was a legal secretary working for Philip Shalloway, an attorney who had done legal work for both Lilly Homes and Driscoll Development. Ball noticed that Driscoll Development was not on the deed, but believed its signature was needed. Before the deed was recorded, Ball alerted an employee of U.S. Titles to this fact and spoke with Chopp within one day of settlement and advised him of the problem. Nonetheless, the deed was recorded by U.S. Titles on November 15, 1985, without any correction or change despite the notice from Ball.
 
 
 9
 In late 1988 or early 1989, Cahill contracted to sell her home. Cahill had not been informed of the title problem at the time she contracted to sell the home, although U.S. Titles was well aware of the problem. She discovered the problem as a result of another title search done in connection with the sale of the home.
 
 
 10
 In March 1989, after Cahill contracted to sell her home, an agent of U.S. Titles met with Richard Driscoll to seek Driscoll Development's signature on the deed. Mr. Driscoll refused to sign the deed until certain sums of money were paid to him, allegedly based on debts of Lilly Homes or the joint venture to Driscoll Development. After an initial demand of $250,000, Driscoll Development signed the deed for $100,000. $30,000 was paid by Chopp, $30,000 by U.S. Title, and $40,000 by Meridian.
 
 
 11
 When the other lot (lot 6) assigned to Lilly Homes at dissolution of the joint venture was sold in 1986, the title search promptly revealed the same title defect. Driscoll Development signed the deed and cleared title without demand for compensation. Driscoll had known since November 1985 that Lilly Homes had sold lot 14. Despite this knowledge, Driscoll Development had never made any demand for payment for amounts allegedly due from Lilly Homes until after it became clear that the deed on lot 14 had been recorded without Driscoll Development's signature and that such signature was needed immediately to clear title to the lot and avoid disruption of Cahill's sale.
 
 II.
 
 12
 Under Virginia law, subrogation, though favored, is not a matter of absolute right, but is granted or withheld as the equities of a particular case may require. Thompson v. Miller, 195 Va. 513, 79 S.E.2d 643, 647 (1954). Subrogation is a creature of equity. Federal Land Bank of Baltimore v. Joynes, 18 S.E.2d 917, 920 (Va.1942). Because a court's determination concerning subrogation involves the weighing of equities, see Joynes, 18 S.E.2d 917, 920 (Va.1942), we review the district court's decision under the "abuse of discretion" standard.
 
 
 13
 In this case, the district court found, and the parties do not dispute, that Meridian, through its agent U.S. Titles, was negligent. Four separate incidents of negligence are included in the district court's findings of fact. First, U.S. Titles failed to properly prepare the insurance binder. Second, U.S. Titles failed to catch the error when the binder was reviewed. Third, U.S. Titles was notified of the problem before the deed was recorded, but recorded the deed anyway. Finally, U.S. Titles did not alert Cahill to the problem or attempt to correct the problem until Cahill had a contract on the property.
 
 
 14
 Standing alone, "ordinary negligence" on the part of a party seeking subrogation is an insufficient reason to deny a request for subrogation. Joynes, 18 S.E.2d at 921. The negligence of a party coupled with prejudice to subsequently intervening rights may, however, bar subrogation. Id.
 
 
 15
 Meridian argues that the district court dismissed the subrogation claim based solely on the negligence imputed to Meridian. Meridian urges that in order to conclude that subsequently intervening rights of Lilly Homes were prejudiced by Meridian's negligence, the district court must have made a specific finding that Lilly Homes relied on the title search by U.S. Title. Meridian argues such finding is not supported by the record.
 
 
 16
 Though the district court did not explicitly link its holding that subsequently intervening rights of Lilly Homes had been prejudiced to a specific factual finding, the district court's holding is clearly supported by the record. Reliance by the involved parties was implicit in the circumstances surrounding the sale of this lot. The contract of sale specifically provided for termination of the agreement by Cahill if the title search revealed defects. The contract further provided that failure of Cahill to object to defects prior to settlement would constitute waiver of all such defects. By design, the settlement process looked to U.S. Titles' title search to raise a "red flag" if the title was defective. U.S. Titles, by its negligence, failed in this undertaking. Consequently, Lilly Homes lost the opportunity to correct the deed prior to giving the general warranty or to forego the contract altogether.
 
 
 17
 The district court noted that when Lilly Homes' other lot was sold and the title problem was promptly discovered, Driscoll Development made no demands for payment of alleged past debts. Furthermore, when Richard Driscoll saw that lot 14, the Cahill lot, had been sold, he made no demand or claim. Only when Cahill's subsequent sale of lot 14 was jeopardized did Driscoll raise the issue of alleged debts and demand payment in return for signing the deed and clearing title to lot 14. The negligence of U.S. Titles and Meridian gave Driscoll Development leverage to demand large sums of money based on alleged debts of Lilly Homes. Lilly Homes has never had opportunity to challenge the validity of these alleged debts and would have no opportunity if subrogation were permitted.
 
 
 18
 The district court's holding is amply supported by the record in this case. Meridian, through its agent U.S. Titles, was clearly negligent. All parties involved relied upon the accuracy of the title search by U.S. Titles. Failure to discover the title defect prejudiced rights arising under the contract of sale and gave Driscoll Development undue bargaining power with regard to questionable claims against Lilly Homes.[2] While, as Meridian points out, Lilly Homes could have perhaps taken steps to correct the problems arising from Meridian's negligence, the district court did not abuse its discretion in concluding that under the facts of this case Meridian was not entitled to pursue a subrogation claim for breach of warranty of title. The district court carefully weighed the equities and concluded that Meridian should not be permitted to recover for the debt. The court correctly noted that Meridian was fully responsible for creating the debt and any mistakes or wrongful conduct on the part of Lilly Homes should not result in Meridian escaping responsibility for a problem it ultimately caused.
 
 
 19
 In view of the above, the court concludes that the district court did not abuse its discretion in weighing the equities of this case and denying Meridian's subrogation claim for breach of warranty of title.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Meridian does not appeal the dismissal of its fraud claim or the dismissal of Frederick Lilly in his individual capacity
 
 
 [2]
 In its brief and at oral argument, counsel for Lilly Homes contended that any alleged claim by Driscoll Development arising from the oral joint venture was time barred under the applicable Virginia statute of limitations